COMMONWEALTH vs. SCOTT K. McINTYRE.

Norfolk. March 5, 2002. - May 15, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Restitution. Practice, Criminal,* Probation, Sentence, Restitution.

At a restitution hearing following the defendant's conviction of assault and battery by means of a dangerous weapon, the judge properly awarded restitution to the victim that took into account property damage to the victim's automobile, despite the lack of a conviction of a crime based on property damage, where the damage to the victim's automobile bore a significant causal relationship to the crime of which the defendant was convicted. [831-836]

There was no merit to the contention by a criminal defendant, convicted of assault and battery by means of a dangerous weapon, that an award of restitution for damage to the victim's automobile amounted to an award of restitution for an uncharged crime, depriving him of property without due process of law, where the judge properly limited restitution to the documented property damage bearing a significant causal relationship to the crime charged, and where the defendant was afforded reasonable and fair process. [836]·

COMPLAINT received and sworn to in the Stoughton Division of the District Court Department on April 8, 1998.

The case was tried before *James H. Wexler*, J., and a motion for restitution was heard by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Varsha Kukafka*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. This case raises a question of first impression: Whether an award of restitution that takes account of property damage as part of a criminal conviction of assault and battery by means of a dangerous weapon, in the absence of a conviction of a crime based on property damage, exceeds the proper

scope of a restitution order. We answer the question in the negative and uphold the judge's determination of the amount of restitution.

*Facts.* After finishing his shift at the Brockton post office at 2:30 A.M. on April 8, 1998, the victim decided to collect discarded cans. Following his "special route," the victim went to an apartment complex in Stoughton, even though the head of the maintenance staff had told him that she would telephone the police if she saw him there again.

The victim was at a dumpster sorting through the trash, when he felt a sharp pain in his lower back. At the same time, someone said, "take that, [now] get out of my fucking area." The victim turned around to see the defendant swinging a knife at him. The victim shielded himself with his bag of cans and the defendant fled.

The victim felt intense pain in his back and got into his car and began driving. Unaware of the extent of his injury, he stopped at the next dumpster, about 600 to 700 feet away. The defendant returned, this time with his dog. The defendant ordered his dog to attack the victim, and the dog grabbed the victim's pant leg. The victim again tried to protect himself with the bag of cans, but the defendant grabbed the bag away. Fearing that the defendant would stab him again, the victim fled to his car. Just as the victim got in, the defendant kicked the door and the fender.

The victim began to feel the blood flowing from his wound, and he drove into the street and honked his horn. A Stoughton police officer stopped to help. After the victim told the officer that he had been stabbed and showed his wound, the officer told the victim to drive to a hospital and that he would follow. The victim was treated at the hospital for his wound, a two-inch wide puncture in his upper buttocks that had penetrated his shirt and pants.

At 4 A.M., Sergeant Thomas Murphy of the Stoughton police department went to the hospital and observed the victim's wound. At 7:30 A.M., he went to the defendant's home and, after administering Miranda warnings, spoke with the defendant. The defendant said that he had seen the victim trespassing on his

property and followed him to the dumpsters. He said that they had an "altercation" and that he had kicked the victim in the back. He denied stabbing the victim. Sergeant Murphy arrested the defendant.

The defendant was charged with assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A, and armed robbery, G. L. c. 265, § 17A, subsequently reduced to larceny from a person.[1] The defendant was tried before a judge and a jury of six in the District Court, and the jury found him guilty of assault and battery by means of a dangerous weapon. The judge sentenced the defendant to two and one-half years of probation, with several conditions: completion of an anger management program within thirty days; compliance with a court clinic mental health evaluation and medication as prescribed; procurement and maintenance of employment; compliance with a "stay away" order; and payment of restitution to the victim in an agreed amount or an amount determined at a restitution hearing.

The parties were not able to agree on restitution, and proceeded to a hearing. The judge heard testimony on the victim's losses relating to medical care, clothing, lost wages, and car repair. The judge allowed restitution for damage to the victim's car, but denied any with respect to the collected cans, the subject of the larceny charge on which he granted the defendant's motion for a required finding of not guilty. The victim asserted that the defendant kicked both the car door and fender as the victim got in, and the victim provided receipts indicating the cost of repair. The judge ordered the defendant to pay $168 in restitution for car repair. The defendant objected on the basis that there had been no charge of malicious destruction of property. The judge awarded the restitution over the defendant's objection, and the defendant appealed, alleging that the judge's award of restitution for damage to the victim's car went beyond the scope of a restitution order under the statutory language of G. L. c. 276, § 92. We granted his application for direct appellate review.

*Discussion.* The defendant's claims present the following question. What is the proper scope of restitution imposed as a

---

[1] The judge allowed the defendant's motion for a required finding of not guilty on the larceny count.

condition of probation on a defendant convicted of a crime? The defendant asserts that the scope of restitution within the judge's power to order was constrained by the language of G. L. c. 276, § 92, that he "make restitution or reparation to the person injured by him *in the commission of his offence*" (emphasis added). The defendant further asserts that similar language appears in other statutes concerning restitution. See G. L. c. 276, § 92A (mandating restitution for financial loss "sustained . . . *as a result of the commission of the crime*," with motor vehicle theft or fraudulent claims); G. L. c. 258B, § 3 (*a*) (affording victims of crime fundamental right "to request that restitution be an *element of the final disposition of a case*," defined in § 1 as "the sentencing or determination of *penalty or punishment to be imposed upon a person convicted of a crime*"); G. L. c. 279, § 4B (victim impact statement to include "documentation of the net financial loss, if any, suffered by the victim or a family member *as a result of the crime*"). The defendant maintains that, because the damage to the victim's car was not a direct result of the defendant stabbing the victim, the restitution awarded was beyond the scope of the statutes. He asserts further that a proper reading of the statutes requires that he only may be made to pay restitution for injuries flowing from the elements of the underlying crime of which he was convicted. We disagree with the defendant's interpretation.

None of the statutes the defendant cites in support of his argument is the source of the judge's power to order restitution in the instant case. General Laws c. 276, § 92, provides the court with the power to require that a defendant make restitution payments directly to a probation officer if the entire amount is not paid at once. It does not create a power to order restitution. General Laws c. 276, § 92A, requires restitution in addition to other punishments for the conviction of certain enumerated offenses, none of which is implicated in this case. The victim and witness rights provided under G. L. c. 258B, § 3, allow a victim to request restitution in the disposition of a criminal case, but do not provide the court with authority to make such an order. Finally, G. L. c. 279, § 4B, merely requires documentation of the financial loss suffered by a victim of crime to be part of the victim impact statement prepared by the

office of the district attorney. The power of a judge to order restitution in a case such as the one before us is neither derived from nor constrained by the statutes on which the defendant relies.

The judge's power to order restitution in a criminal case, such as this, derives from the judge's power to order conditions of probation under G. L. c. 276, §§ 87, 87A, and G. L. c. 279, § 1. See Harland, Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts, 30 U.C.L.A. L. Rev. 52, 57-58 (1982) (stating power to order restitution read into statutes permitting suspended sentence and probation conditions in absence of statute specifically allowing restitution). We have held that "judges are permitted great latitude in sentencing as long as the sentence imposed is within the limits provided by the statute under which the defendant is convicted." *Commonwealth* v. *Power*, 420 Mass. 410, 413-414 (1995), cert. denied, 516 U.S. 1042 (1996), and cases cited. See *Apprendi* v. *New Jersey*, 530 U.S. 466, 481-483 (2000); *Harmelin* v. *Michigan*, 501 U.S. 957, 998-999 (1991) (plurality opinion). It has been "held generally that a condition of probation is enforceable . . . [when] the condition is primarily designed to meet, i.e., 'reasonably related' to, the goals of sentencing and probation." *Commonwealth* v. *Power*, *supra* at 414. General goals of sentencing include punishment, deterrence, incapacitation, and rehabilitation.[2] *Id.* "There is no question that restitution is an appropriate consideration in a criminal sentencing." *Commonwealth* v. *Nawn*, 394 Mass. 1, 6 (1985), citing *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 717 (1961).

Like any other criminal sanction, restitution best serves penal objectives when it bears a proper relationship to the crime of conviction, both in kind and proportion. See Nygaard, On the Philosophy of Sentencing: Or, Why Punish?, 5 Widener J. Pub. L. 237, 265-266 (1996) (likening punishment in excess of need to punishing the innocent). "If a sentence is not functional, . . .

---

[2]Restitution also serves the ancillary purpose of compensating the victim for economic losses. See *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 (2001). To serve this objective, the restitution award must bear a relationship to the injury caused by the defendant's criminal conduct. The causation test we establish here serves this end.

no one knows it better than the sentenced offender." *Id.* The public and the offender must know that justice has been done. *Id.* at 266. We must seek to penalize offenders in such a way that they understand the reasonableness of the punishment, "free of any legitimate hatred for the system that punished [them], and without the unnecessary venom we generate by excessive [punishment]." *Id.* There must be a connection between the injury and the crime of conviction for restitution to serve as a functional sanction, rationally related in cognizable terms to the crime.

In facing challenges to the propriety of restitution orders, we have constructed other limitations consistent with the intent of the Legislature. Restitution is limited to economic losses caused by the defendant's conduct and documented by the victim. *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 (2001). An order of restitution must be supported by facts and evidence. *Id.* at 221-222. The procedure for establishing an order of restitution must be fair and reasonable. *Commonwealth* v. *Nawn, supra* at 7. The defendant must have an opportunity to be heard and to cross-examine witnesses. *Id.* at 6-7. The defendant is entitled to rebut the victim's estimate of the injury with the defendant's own experts or witnesses. *Id.* See *Commonwealth* v. *Rescia*, 44 Mass. App. Ct. 909, 910 (1998), citing *Denson* v. *State,* 556 So. 2d 823, 824 (Fla. Dist. Ct. App. 1990) (in restitution proceeding, evidence must establish significant causal connection between loss and crime charged). Finally, the Commonwealth bears the burden of proving the amount of the loss by a preponderance of the evidence. *Commonwealth* v. *Nawn, supra* at 7-8.

Although G. L. c. 276, §§ 87, 87A, and G. L. c. 279, § 1, do not create any limitation on a judge's authority to order restitution, an order of restitution should reflect a relationship between the crime of conviction and the injury. The statutes the defendant cites do not control our analysis; however, the language therein does suggest that the Legislature also believes restitution should reflect a relationship between the crime and the victim's injury or loss. We now hold, in addition to the other established principles, that restitution must bear a causal connection to the defendant's crime. We have not described the necessary connec-

tion in our jurisprudence; however, other jurisdictions confronting similar challenges have established various causation tests.[3] Although many of the cases we cite in the note interpret statutory language empowering courts to grant restitution, we find these authorities useful to our analysis. We adopt the less formulaic approach announced by the Supreme Court of Florida in *Glaubius* v. *State*, 688 So. 2d 913, 915 (Fla. 1997), and hold that the scope of restitution is limited to "loss or damage [that] is causally connected to the offense and bears a significant relationship to the offense." *Id.* Furthermore, "we look to the underlying facts of the charged offense, not the name of the crime [of which the defendant was convicted, or] to which the defendant entered a plea." *State* v. *Landrum*, 66 Wash. App. 791, 799 (1992).

In the instant case, the damage to the victim's automobile bore a significant causal relationship to the crime of which the defendant was convicted. After the defendant stabbed the victim in the upper buttocks and fled, he returned and set his dog on the victim. The victim attempted to defend against the dog's attack with the bag of cans he had collected. When the defendant

---

[3]Some courts only allow restitution for injury resulting from "the specific conduct that is the basis of the offense of conviction." See, e.g., *Hughey* v. *United States*, 495 U.S. 411, 413 (1990); *State* v. *Aubert*, 119 Idaho 868, 870 (1991); *Polen* v. *State*, 578 N.E.2d 755, 758 (Ind. Ct. App. 1991). Some jurisdictions apply a proximate cause analysis. See, e.g., *State* v. *Wilkinson*, 202 Ariz. 27 (2002) (stating standard stricter than "but for" analysis); *People* v. *Flanagan*, 133 Ill. App. 3d 1, 5 (1985); *State* v. *Bradley*, 637 N.W.2d 206, 215 (Iowa Ct. App. 2001). Others look only for "but for" causation. See, e.g., *Matter of Welfare of D.D.G*, 532 N.W.2d 279, 282-283 (Minn. Ct. App. 1995) (reward offer would not have occurred "but for" bomb threat hoax); *State* v. *Bullock*, 135 Or. App. 303, 307 (1995) (causation is met by applying "but for" standard); *In re Dublinski*, 695 A.2d 827, 830 (Pa. Super. Ct. 1997) (holding juvenile liable for damages that would not have occurred "but for" her criminal conduct"). The United States Court of Appeals for the First Circuit and Utah have applied a modified "but for" test, i.e., that the "causal nexus between the conduct and the loss is not too attenuated." See *United States* v. *Vaknin*, 112 F.3d 579, 589-590 (1st Cir. 1997); *State* v. *McBride*, 940 P.2d 539, 544 (Utah Ct. App. 1997). A final group looks only for a causal connection. See, e.g., *Glaubius* v. *State*, 688 So. 2d 913, 915 (Fla. 1997) (stating court must find damage causally connected and bears significant relationship to the offense); *State* v. *Allen*, 260 Kan. 107, 116 (1996) (defendant responsible for restitution exceeding amount charged in complaint); *State* v. *Enstone*, 137 Wash. 2d 675, 682 (1999) (conceiving of injury so remotely connected to crime as to not allow restitution).

grabbed the bag, the victim retreated to his car to avoid the ongoing assault. Just as the victim got into the car, the defendant kicked the victim's car door and fender. There is no question that the damage to the victim's car occurred during the course of an ongoing assault. The causal relationship between the criminal episode and the damage to the vehicle meets the standard we announce today, and the judge properly awarded restitution to cover the repairs.

*Additional arguments.* The defendant also alleges that to award restitution for damage to the victim's car amounts to an award of restitution for an uncharged crime and, therefore, deprives him of property without due process of law.[4] We reject the defendant's argument because, as we explained above, the restitution amount representing damage to the victim's car reflects injury resulting from the crime of which the defendant was convicted and not for an uncharged crime. Furthermore, the defendant was afforded reasonable and fair process. See *Commonwealth* v. *Nawn, supra* at 7-8. The defendant was afforded a hearing and was able to cross-examine the witnesses against him. *Id.* The judge properly limited restitution to the documented property damage bearing a significant causal relationship to the crime charged and, thus, did not commit an abuse of discretion or an error of law.

*Judgment affirmed.*

---

[4]The judge properly excluded any restitution for the lost cans because he had granted the defendant's motion for a required finding of not guilty on the larceny from a person count.