COMMONWEALTH vs. JASON J. CASANOVA.

No. 05-P-715.

Hampshire. January 12, 2006. - March 13, 2006.

Present: LAURENCE, LENK, & GRASSO, JJ.

*Practice, Criminal,* Restitution. *Restitution.*

The evidence at a restitution hearing in a criminal proceeding was insufficient
to support a finding of a causal connection between the injuries inflicted in
the attack and the victim's withdrawal from college; accordingly, this court
vacated a District Court judge's order of restitution that required payment
from the defendant for lost tuition occasioned by the victim's withdrawal.
[754-757]

COMPLAINT received and sworn to in the Eastern Hampshire
Division of the District Court Department on June 21, 2004.

Proceedings for restitution were had before *Nancy Dusek-Gomez*, J.,

*Adriana Contartese* for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the
Commonwealth.

GRASSO, J. *Commonwealth* v. *McIntyre*, 436 Mass. 829 (2002),
establishes that the scope of restitution in a criminal proceeding
is limited to loss or damage that is "causally connected to the
offense and bears a significant relationship to the offense" (cita-
tion omitted). *Id.* at 835. On appeal from a restitution order that
required payment for lost tuition occasioned by the victim's
withdrawal from college, the defendant maintains that the judge
erred in concluding that the victim's postincident condition, and
subsequent withdrawal, were caused by the defendant's attack.
We conclude that the evidence was insufficient to support a
finding of a causal connection between the injuries inflicted in
the attack and the victim's withdrawal from college, and we
vacate the order of restitution.

1. *Background.* On October 12, 2004, the defendant, Jason J. Casanova, admitted to sufficient facts on complaints that alleged assault and battery (G. L. c. 265, § 13A[a]), threatening to commit a crime (G. L. c. 275, § 2), and disorderly conduct (G. L. c. 272, § 53). The complaints involved an incident on October 8, 2003, in which the defendant attacked Christopher Buczko, a student and resident assistant in a dormitory at the University of Massachusetts at Amherst (University). Following the defendant's admission, the judge ordered the matters continued without a finding for one year on certain conditions, including payment of restitution to the victim.

2. *The restitution hearing.* At the subsequent restitution hearing, the defendant did not contest that a restitution order should include eighty-two dollars in medical bills for the victim's medical treatment immediately following the incident. The crux of the hearing concerned the disputed contention that the victim's postincident condition, withdrawal from college, and claim for $8,046 in lost tuition were causally connected to the defendant's criminal conduct.[1] On this issue, both the victim and the defendant testified.

The victim testified that in October, 2003, he was in his junior year. At the close of the previous semester in May, he had experienced severe health issues. He told the court, over the defendant's objection, that he had been diagnosed with mononucleosis, for which he had been under a doctor's care throughout the summer and on his return to the University in September.[2] He claimed that on his return to school, he had experienced a recurrence of mononucleosis, as well as food poisoning. He described the symptoms of his mononucleosis as including severe vomiting, yellow eyes, and fatigue. He also related that notwithstanding his mononucleosis, he did not miss classes. He scheduled his classes to allow himself forty-five minutes to walk across campus to arrive on time.

The victim stated that he was under the care and treatment of

---

[1]Throughout the hearing, the defendant maintained that proof of causation required a medical expert or medical documentation, neither of which was forthcoming.

[2]The defendant objected to the victim's assertion that a doctor had diagnosed him with mononucleosis.

a Dr. Calhoun, the medical director at the University, who saw him once a week. Again over objection,[3] the victim asserted that in early October, 2003, Dr. Calhoun had cleared him to resume certain activities, including working out at the gym. The victim testified that prior to the October 8 attack he was "feeling much better."

The victim then described the unprovoked attack in which the defendant hit him in the face a couple of times, split his lip, and gave him a bloody nose and a cut under his right eye. The cut necessitated nine stitches and left a scar. The victim also asserted that the defendant hit him in the stomach and chest.[4] The next day, he woke up aching. His chest, face, and head hurt, and he had facial bruising. He also felt violently ill and began to throw up, just as when he had mononucleosis. "I was violently, violently sick, and I would just throw up in toilet [*sic*] constantly. And . . . I was having the same symptoms again. My eyes were yellow, which is what happens when your liver and your spleen starts [*sic*] to act up."

In the weeks that followed, the victim said he missed a lot of classes. He had problems walking, just as when he was suffering from mononucleosis, but now it would take him an hour to walk across campus. He would throw up on the way to class. He began handing in papers late. He would meet with professors during office hours and conduct homework by electronic mail. Again over the defendant's objection, the victim related that a Dr. Calkins at the University medical facility told him that he was sick, that his body had sustained such a shock that, in the victim's words, "I was probably just . . . experiencing another episode of [the] mono that he thought I was over . . . I had gotten over it, but because I had suffered such a shock that maybe being punched in the stomach a few times, that . . . would cause my body to . . . become ill again." By November, the victim stated he had to withdraw from school for medical reasons because he was too sick to continue. Because his

---

[3]The judge allowed the defendant a continuing line of objection.

[4]The defendant denied striking the victim in the stomach and brought out on cross-examination that in the victim's contemporaneous report of the assault to the police, he had only mentioned being punched in the face and head. As discussed later, the judge credited the victim's version.

withdrawal occurred late in the semester, he did not receive any financial reimbursement from the University and incurred $8,046 in lost tuition.[5]

The defendant admitted punching the victim in the face three times. He also maintained that he spoke with the victim the day after the incident to apologize, and the victim told him that he was not sure he was going to continue on campus because he was sick with mononucleosis.

In summation, defense counsel maintained that restitution should be limited to the eighty-two dollars of medical expense for treatment of the victim's injuries because the Commonwealth had failed to prove a causal connection between the defendant's criminal conduct and the victim's postincident condition and withdrawal from school. He reiterated, as he had throughout the hearing, that the question of causal connection was beyond the realm of lay understanding and required expert testimony or documentation.

At the conclusion of the hearing, the judge recited her factual findings on the record. The judge concluded that from June until the first week of October of 2003, the victim was ill from mononucleosis, which included violent bouts of vomiting, fatigue, and yellow eyes. During that period the victim's regular activities were interrupted. He was not allowed to work out or run or engage in sports because his doctor informed him that one of the side effects of mononucleosis was enlargement of the liver and spleen and that a blow might cause a rupture. Around October 1, the victim was feeling healthy and able to attend classes. The doctor released the victim from the restrictions on his activity at that time.

The judge specifically found that the defendant hit the victim in the stomach as well as the face. She found further that after the assault, the victim experienced a reoccurrence of the severe vomiting and other symptoms attendant to mononucleosis. She credited that these symptoms were so severe that he could not attend classes, that had to withdraw from the University, and

---

[5]The record shows that victim was billed $8,046 for tuition, and received $1,382 in scholarships or grants. Because the victim failed to prove that his withdrawal was causally connected to the injuries he sustained, we need not address further the actual amount of loss.

that he was out of pocket $8,046 in tuition. On these findings, the judge concluded that there was a causal connection between the defendant's offense and the physical condition that caused the victim to withdraw that supported the imposition of restitution for lost tuition.[6]

3. *Discussion.* "[R]estitution is an appropriate consideration in a criminal sentencing." *Commonwealth* v. *Nawn,* 394 Mass. 1, 6 (1985). A judge's power to order restitution as a component sanction of criminal sentencing is unquestionable and derives from the power to order conditions of probation under G. L. c. 276, §§ 87, 87A, and G. L. c. 279, § 1. *Commonwealth* v. *McIntyre,* 436 Mass. at 833. "Restitution also serves the ancillary purpose of compensating the victim for economic losses." *Id.* at 833 n.2, citing *Commonwealth* v. *Rotonda,* 434 Mass. 211, 221 (2001). The power to order restitution extends as well to dispositions that are continued without a finding. See *Commonwealth* v. *Rotonda, supra* at 221-222.

"Like any other criminal sanction, restitution best serves penal objectives when it bears a proper relationship to the crime of conviction, both in kind and proportion." *Commonwealth* v. *McIntyre, supra* at 833. "Restitution is limited to economic losses caused by the defendant's conduct and documented by the victim." *Id.* at 834. See *Commonwealth* v. *Hastings,* 53 Mass. App. Ct. 41, 43 (2001) (equating "economic loss" with financial loss so as to encompass lost earnings, out of pocket expenses, and replacement costs, but not pain and suffering); *Commonwealth* v. *Cromwell,* 56 Mass. App. Ct. 436, 441-443 (2002).[7]

To serve these objectives, in addition to other established

---

[6]The judge expressly disclaimed making any finding that the victim had suffered a recurrence of mononucleosis and purported to rest her determination that there was a causal connection on the conclusion that "[i]t does not take a medical expert for a lay person to testify, 'This is how I felt before the assault and this is how I felt after.' "

[7]In the context of criminal sentencing, restitution "is defined in G. L. c. 258B, § 1, inserted by St. 1983, c. 694, § 2, as 'money or services which a court orders a defendant to pay or render to a victim as part of the disposition.' " *Commonwealth* v. *Nawn,* 394 Mass. at 6 n.3. Case law has not defined the full contours of restitution, or the differences between restitution and the damages that are compensable in a civil action. In dictum, *Rotonda* suggests that "such items as medical expenses, court-related travel expenses, property loss

principles, "the restitution award must bear a relationship to the injury caused by the defendant's criminal conduct." *Commonwealth* v *McIntyre*, 436 Mass. at 833 n.2. "There must be a connection between the injury and the crime of conviction for restitution to serve as a functional sanction, rationally related in cognizable terms to the crime." *Id.* at 834. From among the extant tests[8] for determining whether restitution bears the requisite causal connection to the defendant's crime, Massachusetts has adopted the "less formulaic approach announced by the Supreme Court of Florida in *Glaubius* v. *State*, 688 So. 2d 913, 915 (Fla. 1997)." *Id.* at 835. "[T]he scope of restitution is limited to 'loss or damage [that] is causally connected to the offense and bears a significant relationship to the offense.' " *Ibid.*, quoting from *Glaubius* v. *State, supra* at 915. The underlying facts of the charged offense, not the name of the crime of which the defendant was convicted or to which he pleaded guilty, controls. See *Commonwealth* v. *McIntyre, supra* at 835.

The procedure used to determine the appropriateness and amount of restitution must also be fair and reasonable. "The hearing need not be elaborate; a forum for both sides to air their views and cross-examine is sufficient." *Commonwealth* v. *Nawn*, 394 Mass. at 7. Cross-examination does not extend to matters of guilt or innocence, but is limited to the issue of restitution. See *id.* at 8. The Commonwealth bears the burden of proving the victim's losses and their amount by a preponderance of the evidence. See *id.* at 7-8. The Commonwealth also bears the corollary burden of proving the requisite causal connection between the defendant's conduct and the victim's loss or damage.

We discern no requirement that strict evidentiary rules apply at restitution hearings. A restitution hearing is not part of a criminal prosecution to which the full panoply of constitutional protections applicable at a criminal trial need be provided, but principles of due process govern. Restitution is part of a probationary

and damage, lost pay, or even lost paid vacation days required to be used to attend court proceedings might all be included in an appropriately documented restitution order." *Commonwealth* v. *Rotonda*, 434 Mass. at 221. The lost tuition sought here would appear to fall within the ambit of available restitution on proper proof of causal connection.

[8] See *Commonwealth* v. *McIntyre*, 436 Mass. at 835 n.2.

sentence and, as with probation revocation, a restitution hearing must be flexible in nature and all reliable evidence should be considered. The "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). Accordingly, hearsay, if reliable, is admissible to carry the Commonwealth's burden at a restitution hearing. See *Commonwealth* v. *Yeshulas*, 51 Mass. App. Ct. 486, 492-493 (2001); *Commonwealth* v. *Williams*, 57 Mass. App. Ct. 917, 917 (2003) (no error in relying on repair cost estimates prepared by vendors). Conversely, unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis for a determination that the loss or damage for which restitution is sought is causally connected and bears a significant relationship to the offense. Cf. *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990) ("Unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation").

Mindful of these principles, we examine the evidence, the judge's factual findings, and the order of restitution. We accept the factual findings supported by the record, as the judge was in the best position to determine matters of credibility. Findings that are based on credibility assessments are uniquely the province of the trial judge, and we will not disturb them on appeal. See *Commonwealth* v. *Boucher*, 438 Mass. 274, 275-276 (2002). We will also sustain the judge's ultimate finding of causal connection if there is a legally sufficient foundation therefor. See *Commonwealth* v. *Cromwell*, 56 Mass. App. Ct. at 441-442.

Here, the judge's factual findings do not provide a sufficient basis for concluding that the victim's postincident symptoms and consequent withdrawal from college bore a causal connection to the defendant's crime. The sole evidence bearing on causal connection was the victim's unsubstantiated assertion that he had been diagnosed with mononucleosis and that a doctor had told him that the defendant's blows may have triggered a recurrence. Such unreliable hearsay is insufficient to carry the Commonwealth's burden of establishing causation, an essential predicate for a restitution order.

The judge erred in concluding that the evidence permitted finding the requisite causal connection. Crediting the victim's testimony that "he felt good before the incident and bad afterwards" still begs the question whether the victim's post-incident condition and withdrawal is "causally connected and bears a significant relationship to the defendant's conduct." Absent expert opinion, either by way of testimony or reliable hearsay, such a conclusion is mere speculation, or at best, an inappropriate application of the res ipsa loquitur doctrine. See *Enrich* v. *Windmere Corp.*, 416 Mass. 83, 88-89 (1993). Contrast *Edwards* v. *Boland*, 41 Mass. App. Ct. 375, 379-380 (1996). Even were we to assume that the victim's testimony alone was sufficient to establish that he had been diagnosed previously with mononucleosis, nothing supported a causal nexus between the defendant's attack and the victim's withdrawal from school other than the victim's hearsay recitation of the doctor's statement regarding causation. Indeed the victim's symptoms before and after the incident were, as found by the judge, virtually the same: vomiting, yellow eyes, tiredness. From all that appears, the victim's withdrawal was attributable to symptoms of mononucleosis that existed independent of the defendant's conduct. Without expert testimony, or more reliable hearsay evidence than was presented here, a fact finder could not reasonably conclude that the defendant's crime caused or triggered a recurrence of such symptoms.

While the defendant admittedly could have presented an expert witness on the subject, and did not do so, see *Commonwealth* v. *McIntyre*, 436 Mass. at 834; *Commonwealth* v. *Rescia*, 44 Mass. App. Ct. 909, 910 (1998), the burden of proof is on the Commonwealth, not the defendant. See *Commonwealth* v. *Nawn*, 394 Mass. at 7-8; *Commonwealth* v. *McIntyre*, *supra* at 834; *Commonwealth* v. *Palmer P.*, 61 Mass. App. Ct. 230, 233 (2004). Absent the Commonwealth producing evidence sufficient to satisfy its burden of proof, the defendant's failure to produce countervailing proof is irrelevant.

*Order of restitution vacated.*