NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-734                                         Appeals Court


COMMONWEALTH  vs.  THOMAS E. BUCKLEY, THIRD.


No. 15-P-734.

Berkshire.     June 1, 2016. - September 8, 2016.

Present:  Katzmann, Meade, & Agnes, JJ.

Restitution.  Practice, Criminal, Restitution, Findings by
     judge.  Larceny.  Motor Vehicle, Theft.  Negligence,
     Economic loss, Causation, Proximate cause, Intentional
     conduct.  Proximate Cause.  Intentional Conduct.




Complaint received and sworn to in the Pittsfield Division
of the District Court Department on July 15, 2014.

A proceeding to determine restitution was had before
William A. Rota, J.


Matthew J. Koes for the defendant.
Megan L. Rose, Assistant District Attorney, for the
Commonwealth.


AGNES, J.  Victims of crime have the right to request that

the sentence in a criminal case include an order that the

defendant pay restitution to make up for the economic loss they

suffered as a result of the defendant's criminal conduct.[1]
"[T]he scope of restitution is limited to 'loss or damage [that]
is causally connected to the offense and bears a significant
relationship to the offense.'"[2] Commonwealth v. McIntyre, 436

---

[1] "[T]he purpose of restitution . . . is not only to
compensate the victim for his or her economic loss tied to the
defendant's conduct, but also to make the defendant pay for the
damage [which] he or she caused as a punitive and rehabilitative
sanction." Commonwealth v. Williams, 57 Mass. App. Ct. 917, 918
(2003). In Commonwealth v. Denehy, 466 Mass. 723, 737 (2014)
(quotations omitted), the Supreme Judicial Court explained that
a judge's power to order restitution is "unquestionable" and not
limited by statute, and that judges have "significant latitude"
in imposing restitution. In some cases, including cases such as
this involving the offense of larceny of a motor vehicle, the
Legislature has required that courts conduct a restitution
hearing and, if appropriate, order restitution. See G. L.
c. 266, § 29; G. L. c. 276, § 92A.

[2] A victim's economic loss may include items such as
"medical expenses, court-related travel expenses, property loss
and damage, lost pay, or even lost paid vacation days required
to be used to attend court proceedings." Commonwealth v.
Rotonda, 434 Mass. 211, 221 (2001). See Commonwealth v.
Hastings, 53 Mass. App. Ct. 41, 43 (2001) (equating "economic
loss" with financial loss that includes lost earnings, out-of-
pocket expenses, and replacement costs, but not pain and
suffering). Likewise, under Federal law, the losses that are
included in the scope of restitution include the following:
certain medical services, physical and occupational therapy,
transportation, temporary housing, child care, lost income,
attorney's fees and costs, and a final catchall category for
"any other losses suffered by the victim as a proximate result
of the offense." 18 U.S.C. § 2259(b)(3)(A)-(F) (2012). See
Paroline v. United States, 134 S. Ct. 1710 (2014).

"[A] judge has the authority to conduct restitution
hearings and, in so doing, make factual determinations relevant
to the restitution award[; however,] . . .the proper procedural
mechanisms [must be] employed." Commonwealth v. Denehy, 466
Mass. 723, 738 (2014). See Commonwealth v. Casanova, 65 Mass.
App. Ct. 750, 755-756 (2006) ("We discern no requirement that

Mass. 829, 835 (2002), quoting from Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997).

In the present case, the defendant, Thomas E. Buckley, III, pleaded guilty to one count of larceny of a motor vehicle in violation of G. L. c. 266, § 28(a). After a hearing, the judge ordered the defendant to pay restitution in the amount of $3,000 for the loss of the victim's vehicle. On appeal, the defendant raises two issues relating to the restitution order: (1) whether intervening acts of negligence by third parties following the commission of the crime broke the causal chain and should relieve the defendant of the obligation to pay restitution; and (2) whether an agreement between the parties as to the approximate amount of economic loss is a sufficient basis upon which the judge may make an order of restitution. We answer the first question "no," and the second question "yes." Accordingly, we affirm.

---

strict evidentiary rules apply at restitution hearings. A restitution hearing is not part of a criminal prosecution to which the full panoply of constitutional protections applicable at a criminal trial need be provided, but principles of due process govern"). See also Mass. G. Evid. § 1114(b) (2016) (describing procedural requirements). The Commonwealth has the burden of proving the victim's economic losses by a preponderance of the evidence. Commonwealth v. Nawn, 394 Mass. 1, 7-8 (1985). Crime victims are entitled to assistance from the prosecutor in obtaining documentation of their losses. G. L. c. 258B. § 3(o). "A restitution order must be based on evidence presented to the court unless the parties enter into a stipulation." Mass. G. Evid., supra.

Background.  The essential facts are not in dispute.  On July 14, 2014, the defendant was in the parking lot of a grocery store when he took possession of the victim's vehicle.  The defendant claimed that someone had paid him to move a vehicle to an automobile wrecker, and he had mistakenly taken the defendant's vehicle.  The defendant drove the vehicle first to an automobile wrecker and then to a liquor store parking lot, where it was eventually recovered.  After he was seen on a surveillance video, the defendant was arrested.  He immediately told the police where to find the vehicle.

Although the vehicle was located within one or two days of its theft, due to some misinformation or a misunderstanding regarding the victim's contact information, the victim was not immediately notified that his vehicle had been recovered.[3] Because of the miscommunication, it was several months later, when the victim appeared for trial, that he discovered that the police had recovered his vehicle.  In the interim, the victim had purchased a replacement vehicle.

---

[3] When the police attempted to contact the victim to inform him of the vehicle's recovery, they reached a person thought to be the victim's son, and that person allegedly informed them that his vehicle was not missing.  The victim told the court that the person contacted by the police may not, in fact, have been his son, because his son had not been so notified.  In any event, the parties agree that the victim himself was not aware that his vehicle had been located until the day of trial.

During the several months prior to trial, the victim's vehicle had been stored at an auto-body shop and had accumulated roughly $3,036 in storage, mileage, and towing fees. Because the victim was unable to pay the fees, he ultimately transferred ownership of the vehicle to the shop.

After the defendant pleaded guilty, he was sentenced to six months' probation and was ordered to pay various fines and restitution. At the restitution hearing, the judge inquired as to the "book value" of the stolen vehicle, a 1993 Honda Accord. The Commonwealth responded, "Your Honor, I believe we made an approximation last time that it was . . . a little under . . . what the storage fees were, but we don't have a full book value."[4] Defense counsel stated, "there's no dispute as to that" and the issue was simply a "question of what [the defendant] would be capable of paying." The Commonwealth requested $3,036 in restitution, the amount of the fees incurred.

The defendant argued principally that the Commonwealth had not met its burden to prove that the defendant's conduct was causally related to the victim's economic loss. In particular, he argued that the intervening negligence on the part of the

---

[4] The Commonwealth and the victim referred to the "last time" the matter was in court. Defense counsel also reported, "essentially we presented all of this to [a different judge]." However, no transcript of any prior proceeding was provided to this court. See note 10, infra.

police department, not the defendant's crime, was the proximate cause of the victim's loss because the defendant immediately disclosed the vehicle's location to the police and the intervening negligence was not foreseeable.

The judge ordered the defendant to pay $3,000 in restitution. In a written memorandum, the judge noted that "the authorities could have done a better job in reuniting the victim with his car in a timely fashion," but ultimately concluded that "BUT FOR the defendant's criminal action, the victim would not have incurred any loss." He emphasized that the victim was not culpable in any way for the loss. The judge noted that "the parties agreed that the 'book value' of the vehicle was approximately $3,000," and he used that amount to set the restitution order.

Discussion. We review orders of restitution for abuse of discretion or error of law. Commonwealth v. McIntyre, 436 Mass. at 836.[5]

---

[5] In McIntyre, the court reasoned that even though the defendant was convicted of assault and battery by means of a dangerous weapon, not a crime based on property damage, the victim was entitled to restitution for the damage to his automobile because "[t]here [was] no question that the damage to the victim's car occurred during the course of an ongoing assault." Commonwealth v. McIntyre, supra at 835-836 (noting that when the victim fled to his car to escape an ongoing assault, the defendant kicked the car's door and fender).

1.  The Commonwealth met its burden to prove that the defendant caused the victim's economic loss.  In McIntyre, the Supreme Judicial Court adopted the test for causation in restitution cases enunciated by the Florida Supreme Court in Glaubius:  "the scope of restitution is limited to 'loss or damage [that] is causally connected to the offense and bears a significant relationship to the offense.'"[6]  Commonwealth v. McIntyre, supra at 835, quoting from Glaubius v. State, 688 So. 2d at 915.  Although our appellate courts have not had occasion to explain this standard since the decision in McIntyre, the Florida Supreme Court did revisit the issue in Schuette v. State, 822 So. 2d 1275 (Fla. 2002).  In Schuette, supra at 1283, the court held that the criminal offense of driving with a suspended license was not, by itself, the cause in fact of the damage that resulted when the defendant's vehicle collided with the victim's vehicle, and thus an order of restitution against the defendant could not be entered because there was no evidence connecting his criminal conduct to the victim's economic loss. The court explained that the requirement of a "significant relationship" between the defendant's criminal conduct and the

---

[6] In McIntyre, the court added that "we look to the underlying facts of the charged offense, not the name of the crime [of which the defendant was convicted, or] to which the defendant entered a plea."  Commonwealth v. McIntyre, supra at 835 (quotation omitted).

victim's economic loss is another way of describing the traditional requirement of proximate cause.  Id. at 1282.  See Paroline v. United States, 134 S. Ct. 1710, 1719 (2014) ("[T]o say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result").  With the benefit of this additional guidance, we regard the test for causation in restitution cases formulated in McIntyre to require that the Commonwealth establish by a preponderance of the evidence that the defendant's criminal conduct was the cause in fact of the economic injury suffered by the victim, and that the victim's losses were a reasonably foreseeable consequence of the defendant's conduct.

Here, the judge found on the uncontroverted facts that the defendant stole the victim's vehicle and that the defendant's conduct was therefore the factual cause of the economic loss suffered by the victim, in the sense that the defendant set in motion a chain of events that resulted in the loss of the victim's vehicle.  The same finding also satisfies the requirement of reasonable foreseeability, because when the property of another is stolen, it is certainly foreseeable that the victim may not recover it.[7]

---

[7] A requirement that the defendant's criminal conduct be the cause in fact of the victim's economic harm and that such harm was a reasonably foreseeable consequence of the defendant's conduct is consistent with the causation test applied under 18

The defendant urges us to recognize a limitation on the scope of restitution that would bar recovery in cases, such as this one, in which the negligent acts of persons who intervene or become involved in the case after the defendant's criminal conduct break the causal connection between the defendant's criminal conduct and the victim's economic loss. In particular, the defendant argues that, apart from and subsequent to his conduct in stealing the victim's vehicle, the victim's economic loss was caused by the failure of the victim and others to comply with three requirements imposed by G. L. c. 266, § 29:[8]

---

U.S.C. § 2259(b)(3)(A)-(F) (2012). See Paroline v. United States, supra at 1719-1722.

[8] General Laws c. 266, § 29, inserted by St. 1980, c. 463, § 4, provides in relevant part as follows:

"Whenever a motor vehicle is stolen or misappropriated, the owner of record shall sign and submit to the appropriate police authority a statement under the penalties of perjury on a form containing such information relating to the theft or misappropriation of the vehicle as is prescribed by the registrar of motor vehicles.

"Whenever a stolen or misappropriated motor vehicle is recovered by a police officer or other law enforcement officer, the police department shall notify the registry of motor vehicles, the owner of record and the storage facility if any, as soon as possible after the identity of the owner is determined. Such notification may be made by letter, telephone call or personal visit to the owner and shall include information as to the location of the recovered vehicle. In the event the vehicle is placed in a garage or other storage facility, the owner of said facility shall lose his lien for the reasonable charges for storage and towing unless he notifies the owner of record of the vehicle by certified mail and return receipt

first, the failure of the police to notify the victim that his vehicle had been recovered; second, the failure of the auto-body shop to notify the victim, as the owner of record, in writing that it was storing the victim's vehicle and the amount of the storage fees; and third, the victim's failure, as the owner of record, to notify the police in writing that his vehicle had been stolen.

Even if we assume, without deciding, that each of these omissions represents an act of negligence that occurred subsequent to the defendant's criminal conduct and that each omission contributed to the victim's economic loss, the defendant's argument fails.  The defendant has not offered any authority for the view that negligent acts of the victim or third parties that occur after the defendant's criminal conduct break the causal connection that otherwise would support an order of restitution.  The only case cited by the defendant, Commonwealth v. Carlson, 447 Mass. 79 (2006), is inapposite.  There, the defendant was prosecuted for motor vehicle homicide by negligent operation in violation of G. L. c. 90, § 24G(b).  Id. at 79-80.  The victim, who suffered severe chest and lung

---

requested within five days of the date of said recovery or his actual knowledge of the identity of the owner of record.  Said notice shall contain the information on the location of the vehicle and the amount of charge due on said vehicle."

injuries as a result of the defendant's negligent and criminal conduct, died four days after the accident of respiratory failure as a result of her voluntary and entirely lawful decision to forego intubation and respiratory support by means of a ventilator. See id. at 80-82. There was competent medical evidence that the victim would have survived if she had submitted to mechanical ventilatory support and might have returned to the condition that she was in before the defendant's criminal conduct. Id. at 82. In rejecting the defendant's argument that the Commonwealth had failed to prove that she caused the death of the victim, the court explained that "[t]he general rule is that intervening conduct of a third party will relieve a defendant of culpability for antecedent negligence only if such an intervening response was not reasonably foreseeable." Id. at 84 (emphasis supplied). Here, by contrast, the defendant's criminal conduct was based on an intentional act. Additionally, adding qualifications to the test for causation outlined in McIntyre, like those advocated by the defendant, would be contrary to that court's expressed preference for a "less formulaic" approach to causation in restitution cases. Commonwealth v. McIntyre, 436 Mass. at 835.

The result we reach is consistent with a principle at the core of the modern law of torts, namely, that the scope of liability of actors who engage in intentional wrongdoing is

broader than is the scope of liability of actors who are merely negligent.  See Restatement (Third) of Torts § 33(b) (2010) ("An actor who intentionally or recklessly causes harm is subject to liability for a broader range of harms than the harms for which that actor would be liable if only acting negligently").  See also id. at § 34 ("When a force of nature or an independent act is also a factual cause of harm, an actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious").[9]  While proof of causation is a question of fact and each case must be decided on the basis of its underlying facts, see Commonwealth v. McIntyre, supra at 834-835, acts of ordinary negligence committed by third parties --

---

[9] The defendant's reliance on State v. Childers, 979 So. 2d 412 (Fla. Dist. Ct. App. 2008), is misplaced because there the victim did not suffer any economic harm based on the defendant's crimes; "[r]ather, . . . the [victim's] loss was attributable to [its] poor business judgment."  Id. at 414.  Likewise, the defendant's reliance on United States v. Tyler, 767 F.2d 1350 (9th Cir. 1985), is unavailing.  In Tyler, the court applied a different test for causation than the test approved in McIntyre. See id. at 1351 ("Restitution is proper only for losses directly resulting from defendant's offense").  Moreover, in Tyler, the court reasoned that restitution in the amount of the decrease in the value of the stolen property -- which occurred between the date of its theft and the date that the victim sold the property -- was improper because the property was returned to the victim on the date of its theft and "[a]ny reduction in its value stem[med] from the [victim's] decision to hold the [property] during a period of declining prices, not from [the defendant's] criminal acts."  Id. at 1352.  As indicated above, in the present case, the victim was not aware that his vehicle had been recovered until he came to court for trial several months after the theft.

such as the police and the auto-body shop owner in this case --
or the victim, resulting in a delay in returning stolen property
to the victim, generally will be regarded as foreseeable results
of intentional criminal conduct and not significant enough to
break the causal chain of events leading from the defendant's
criminal activity to the victim's economic loss. See State v.
McBride, 940 P.2d 539, 542-544 (Utah Ct. App. 1997). Here, as
in McIntyre, supra, there was a significant causal relationship
between the defendant's criminal conduct and the victim's
economic loss.

2. There was sufficient evidence to support the
restitution order. "Restitution may be ordered only for those
economic losses adequately documented by the victim and
established by the Commonwealth." Commonwealth v. Denehy, 466
Mass. 723, 741 (2014). "[T]he amount of restitution may not
exceed the victim's actual loss." Commonwealth v. Henry, 475
Mass. 117, 129 (2016). There must be a sound basis in the
evidence for the calculation of a restitution award. See
Commonwealth v. Denehy, supra at 740-741. The method by which
the amount of the restitution is calculated must be fair and not
arbitrary. Ibid. The defendant contends that the amount of
restitution ordered in this case was arbitrarily calculated
because it was not based on adequately documented economic
losses suffered by the victim. In particular, the defendant

disputes the basis for the judge's finding that the parties had agreed to the amount of $3,000 as fairly representing the "book value" of the vehicle.

The record before us indicates that at the restitution hearing, the Commonwealth argued that the amount of restitution should be the total amount of the storage, mileage, and towing fees, which was $3,036. The defendant argued that no award of restitution should be made due to the intervening acts of negligence. The judge inquired about the book value of the vehicle and the Commonwealth stated, "Your Honor, I believe we made an approximation last time that it was . . . a little under . . . what the storage fees were, but we don't have a full book value."[10] Defendant's counsel did not object to this statement by the Commonwealth. Defense counsel also declined the judge's invitation to cross-examine the victim. See Commonwealth v. Casserly, 23 Mass. App. Ct. 947, 947 (1986) (upholding restitution award as the defendant did not request a hearing on restitution and the judge heard testimony about the value of the vehicle during trial, fixed an amount that seemed reasonable

---

[10] In its brief, the Commonwealth points out that there was a restitution hearing in December, 2014, "where the approximate book value of the vehicle was discussed, but ultimately the [c]ourt decided not to assess the restitution because it would be better left for the sentencing judge." The Commonwealth adds that it was unable to obtain the transcript of that hearing because it was inadvertently deleted by the court. The defendant does not dispute the accuracy of this statement.

given that testimony, and gave defense counsel time to consult his client, request a further hearing on restitution, or object).  Based on the Commonwealth's statement, the judge determined that restitution should be ordered in the amount of $3,000.  Our review of the record finds support for this factual finding.  See Commonwealth v. Casanova, 65 Mass. App. Ct. 750, 756 (2006) ("We accept the factual findings supported by the record, as the judge was in the best position to determine matters of credibility").[11]

Despite the lack of agreement with regard to whether restitution should be ordered, this is a case in which the parties essentially agreed to the amount of restitution eventually ordered by the judge.  The method of calculating the amount of the restitution order was not arbitrary, but instead based on facts that were not in dispute.  In making an award of restitution, it is widely accepted that "some degree of approximation" is permitted, and that "mathematical precision" is not required.  See United States v. Kearney, 672 F.3d 81, 100 (1st Cir. 2012) (quotations omitted).  Contrast Commonwealth v. Hastings, 53 Mass. App. Ct. 41, 42 (2001) (concluding that a restitution order for the economic loss of a 1984 vehicle could

---

[11] Because the judge found that the parties had reached an agreement on the amount of restitution that should be paid to the victim, the decision in Commonwealth v. Henry, supra, does not affect our analysis.

not be based simply on the cost of buying a different make and model of a 1992 vehicle to replace it).  We discern no abuse of discretion.

<u>Order of restitution
affirmed</u>.