NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-666

COMMONWEALTH

vs.

CHRISTOPHER ALIMONTI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a District Court bench trial, the defendant was convicted of larceny over $1,200 by false pretenses and placed on three years of probation with a condition to pay the victims $15,000 in restitution.  On appeal, the defendant challenges the sufficiency of the evidence and the order of restitution.  We affirm.

Discussion.  1.  Sufficiency of evidence.  We review the denial of a motion for a required finding of not guilty to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore,

378 Mass. 671, 677 (1979). To prove the crime of larceny by false pretenses, the Commonwealth must establish that "(1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." Commonwealth v. Cheromcka, 66 Mass. App. Ct. 771, 776 (2006).

Here, the evidence presented by the Commonwealth at trial allowed the judge to find that the defendant falsely represented that he was a licensed home improvement contractor, and that he knew this was a false statement when he made it. At their initial meeting with the defendant, the homeowners specifically asked whether he was licensed and insured. The defendant responded, "Yes, absolutely." Nonetheless, he obtained a permit using his brother's construction license and a forged signature of the homeowner. Moreover, after the defendant ceased working on the project, the homeowners attempted to investigate the status of the defendant's contractor's license and found that he received his license years after he worked on their project.

Additionally, the evidence allowed the judge to find that the defendant falsely represented that he would start on a project to build a cabana right away and that he knew this was a

2

false statement when he made it. The defendant said, "We got about five days of good weather. If you give me 15,000 for the cabana, I can start the cabana. We can get the footing and foundation in, and I can always build it as the weather changes." Although the defendant said he would start immediately to take advantage of the good weather, he went to Florida during the good weather and then blamed permitting issues and poor weather conditions for putting off the cabana project to the spring, ultimately never doing the project.

There was also evidence that the homeowners relied on these false representations in giving the defendant $15,000. At their initial meeting, the homeowners repeatedly asked the defendant about his status as a licensed contractor, thereby demonstrating the importance the homeowners placed on it. Additionally, the parties discussed a range of renovation projects but drew up a contract specifically regarding the cabana project with a $15,000 deposit, again demonstrating the significance of getting the cabana underway.

That the defendant intended the homeowners to rely on his false representations can be inferred from his surreptitious behavior. See Commonwealth v. Jerome, 56 Mass. App. Ct. 726, 732 (2002) (intent typically inferred from circumstantial evidence). The defendant could have told the homeowners that he needed to use someone else's license to get the permit but that

3

he could still do the job.  He also could have told the homeowners that, if the cabana project could not be started right away, it would have to wait until the spring.  But, if he did so, the homeowners were not likely to have hired him and parted with their $15,000.  In addition to their insistence that their contractor be licensed, the homeowners planned to move into the house by mid-April and expected the construction to be completed before they moved in.  The evidence was sufficient to allow the judge to find that every element of the charged offense was proven.

On appeal, the defendant contends that the judge erroneously inferred the defendant's intent to defraud from the fact that the cabana was never completed.  See Commonwealth v. True, 16 Mass. App. Ct. 709, 711 (1983) (deception as to intent cannot be inferred from mere nonperformance).  He argues that the defendant did substantial other construction work for the homeowners such that it cannot reasonably be inferred that he never intended to build the cabana.  He likens this case to Commonwealth v. Long, 90 Mass. App. Ct. 696, 701 (2016), where this court reversed a conviction of larceny by false pretenses on evidence that the defendant accepted a deposit and then began a construction project but abandoned it.  In that case, the defendant made no particular representation except that implied in the contract.  In other words, by entering into a contract to

4

install windows, he promised that he would install windows. After the relationship between the homeowners and the defendant soured within a couple of days, the defendant stopped work and gave the homeowners a final bill which included the cost of windows that were never installed. We held that evidence was insufficient to establish that the defendant harbored the intent never to install the windows at the time he agreed to do so.

By contrast here, the defendant's representations went beyond the implied promise to fulfill his contractual obligations. Rather, there was evidence of specific representations that the defendant must have known to be false at the time he made them -- that he was a licensed contractor and that he would start on the cabana right away to take advantage of the good weather. Although the parties discussed other renovation work, the only work that got reduced to writing ahead of the work was the cabana. For the remaining work, the defendant would simply ask for more money and the homeowners would give it until they lost track of what expenditures were associated with what work and had paid the defendant in excess of $100,000.

At the homeowners' insistence for clarity, the defendant prepared a document regarding the ongoing construction expenses in the winter of 2018. Unbeknownst to the homeowners, however, the contract filed with the building department in December 2017

listed a job valued at $182,000.  That contract, which contained a forged homeowner signature, had not been presented to the homeowners.  On these facts, the judge reasonably concluded that the defendant's false representations concerning his licensing status and the cabana project were made so that he could get into the house for the more lucrative work.  The evidence was sufficient to allow the judge to conclude that the defendant made knowingly false statements of fact intending to have the homeowners rely on them and that the homeowners did rely on them in parting with their $15,000.  There was no error in the denial of the defendant's motion for a required finding of not guilty.

2.  Restitution.  We review orders of restitution for abuse of discretion or error of law.  See Commonwealth v. Buckley, 90 Mass. App. Ct. 177, 180 (2016).  An order of restitution is limited to an amount of money that is both representative of the actual loss suffered by the victim, and sufficiently documented. Commonwealth v. Rotonda, 434 Mass. 211, 221 (2001).  The victim cannot receive more than that proven amount.  Commonwealth v. Henry, 475 Mass. 117, 129 (2016).  However, it is widely accepted that "some degree of approximation" is permitted, and that "mathematical precision" is not required.  Buckley, supra at 185.

In this case, the judge ordered the defendant to pay the homeowners $15,000.  Although the evidence showed that the

6

defendant obtained only $9,000 for the work he did not perform, restitution for larceny is not limited to the amount stolen by the defendant.  See Commonwealth v. McIntyre, 436 Mass. 829, 835 (2002).  Rather, restitution may include any economic losses "so long as the restitution is significantly causally related to the crime of conviction."  Commonwealth v. Palmer P., 61 Mass. App. Ct. 230, 232 (2004).  Here, as stated, the defendant used his false representations not only to obtain the $9,000 deposit but also to get the victims to hire him for additional projects that he failed to complete in a professional manner.  The husband homeowner testified that "a lot of things had to be changed" and that he had to pay the subcontractors separately.  The wife homeowner testified that it ultimately would cost approximately $17,000 to correct the additional work that the defendant secured only through his criminal actions.  Restitution of

$15,000 was well within the economic losses "causally related" to the defendant's criminal conduct.  <u>Id</u>.

<u>Judgment affirmed</u>.

By the Court (Ditkoff,<br>
Singh & Hodgens, JJ.[1]),

<br>
Clerk

Entered:  September 18, 2024.

---

[1] The panelists are listed in order of seniority.