688 So.2d 913 (1997)
Eric Lee GLAUBIUS, Petitioner,
v.
STATE of Florida, Respondent.
No. 88413.
Supreme Court of Florida.
February 20, 1997.
Richard L. Jorandby, Public Defender and Susan D. Cline, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Attorney General; Georgina Jimenez-Orosa, Senior Assistant Attorney General, Bureau Chief, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for respondent.
*914 OVERTON, Justice.
We have for review Glaubius v. State, 675 So.2d 211 (Fla. 4th DCA 1996), in which the Fourth District Court of Appeal held that investigative costs incurred by a victim are a proper item for restitution. In reaching its decision, the district court certified conflict with Powell v. State, 595 So.2d 223 (Fla. 1st DCA), review denied, 601 So.2d 553 (Fla. 1992), and Ahnen v. State, 565 So.2d 855 (Fla. 2d DCA 1990), wherein the First and Second Districts reached a contrary result. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we approve that portion of the district court's opinion holding that reasonable investigative costs are a proper item for restitution; however, given the speculative nature of the supporting evidence of the costs in this case, we quash that part of the district court's opinion finding that the costs in this case were reasonable. We disapprove Powell and Ahnen to the extent they are inconsistent with this opinion.
Eric Lee Glaubius was sentenced to three years probation after he plead nolo contendere to the charge of grand theft from his employer, Beall's Outlet (Beall's). As part of his sentence, he was also ordered to pay restitution to Beall's.
At the hearing on the amount Glaubius was to pay in restitution, the following facts were established. Rebecca Lee, the manager of Beall's, suspected Glaubius of wrongdoing based on his unusually high refund transactions. Lee contacted Gregory Sherrell, the regional loss prevention manager of Beall's, to conduct a store investigation. After the investigation was complete, Sherrell confronted Glaubius regarding the fraudulent refunds. Glaubius admitted to taking $360 in cash, $300 in merchandise, and $3,000 in fraudulent refunds. He stated, however, that the $360 in cash was repaid from money taken through the false refund transactions.
Sherrell estimated that approximately forty hours had been expended by him and other store employees reviewing refund slips from the store, setting up surveillance equipment, reviewing surveillance tapes, and research. He also estimated that an appropriate fee for that time would be $40 per hour. He admitted that this was "a somewhat arbitrary figure," stating that: "I mean none of us are really paid hourly, but again the equipment, the gas money, the company vehicles and the time, I would think that $40 an hour would be fair."
The trial court found that there was "ample" evidence to establish losses of $3660 in merchandise and cash and that Beall's had expended approximately $1600 in investigative costs. A divided district court affirmed, finding that the investigative costs were a proper item for restitution pursuant to section 775.089(1)(a), Florida Statutes (1993), because those costs were incurred as a "direct or indirect result" of Glaubius' criminal misconduct. Judge Klein dissented, stating that, in his view, the amount of restitution ordered for investigative costs was improper because it was based on nothing more than an estimate by the regional manager and constituted reimbursement for work done by salaried employees during their regular hours of employment.
Glaubius contends that the trial court erred in ordering restitution for the investigative costs because the $1,600 assessed by the court for those costs was not established by a preponderance of the evidence and because there was not a significant relationship between the crime committed and the damages sustained for the investigation. He also asserts that the trial court erred in ordering him to pay $360 in restitution for cash loss because that amount was repaid prior to charges being filed.
Section 775.089, Florida Statutes (1993),[1] governs restitution of victims and provides in pertinent part as follows:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and

*915 2. Damage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution....
. . . .
(7) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney.
(Emphasis added.)
We have previously determined that the purpose of restitution is two-fold: It acts to (1) compensate the victim and (2) serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. Spivey v. State, 531 So.2d 965 (Fla.1988). The trial court is in the best position to determine how imposing restitution may best serve those goals in each case. Id. at 967. Moreover, the trial court has discretion to take into account any appropriate factor in arriving at a fair amount which will adequately compensate a victim for his or her loss and further the purposes of restitution. State v. Hawthorne, 573 So.2d 330 (Fla.1991).
This does not mean, however, that a trial court can arbitrarily award any amount of restitution it deems adequate. Under the plain language of the statute, the loss or damage to be compensated must be "directly or indirectly" related to the offense committed by the defendant. As we stated in State v. Williams, 520 So.2d 276 (Fla.1988), to order restitution under the statute, the court must find that the loss or damage is causally connected to the offense and bears a significant relationship to the offense. Further, under the statute, the State must establish these factors by a preponderance of the evidence. § 775.089(7).
As indicated by the district court's certification of conflict in this case, Florida district courts are divided as to what extent investigative costs constitute "direct or indirect" damages or losses due to a defendant's criminal misconduct. As stated in the instant case, the Fourth District has determined that investigative costs expended to determine whether Glaubius was engaging in criminal misconduct are recoverable because those costs bear a significant relationship to the offense. See also Hodge v. State, 603 So.2d 1329 (Fla. 4th DCA 1992). On the other hand, the First District concluded in Powell v. State, 595 So.2d 223 (Fla. 1st DCA 1992), that both in-house costs and fees paid to a private investigator for investigating whether a defendant committed the offense were not recoverable. In so holding, the court reasoned that such costs would have been incurred by the victim even if the defendant had not been found to have committed the offense. Therefore, the court concluded that there was not a significant causal relationship between the loss and the convicted offense. Likewise, the Second District determined that the fee paid to a private investigator to locate the victim's stolen property was not recoverable because the hiring of the investigator only remotely resulted from the defendant's offense. Ahnen v. State, 565 So.2d 855 (Fla. 2d DCA 1990). We disagree that a victim's costs of investigation are not recoverable.
In Williams, we reviewed the issue of whether the offense of leaving the scene of an accident bore a significant relationship to the damages arising out of the accident. We held that it did not because the damages were not caused either directly or indirectly by the defendant's leaving the scene of the accident; the damages would have occurred with or without the defendant's having left the scene and were independent of that crime. This is distinct from the issue before us here because "but for" Glaubius' criminal misconduct, no investigation would have occurred. The fact that the expenses would have been incurred even if no misconduct had been discovered is irrelevant under these circumstances because, unlike the situation in Williams, the investigative costs were caused by and were significantly related to Glaubius' misconduct. We disapprove the district court decisions in Powell and Ahnen to the extent those cases hold that reasonable costs expended to investigate a defendant's criminal misconduct are not recoverable.
Our inquiry, however, does not end here. Having determined that reasonable *916 investigative costs are recoverable, we must next evaluate whether the costs awarded in this case were in fact reasonable. As indicated by the facts above, the regional manager of Beall's estimated that Beall's employees had expended approximately forty hours investigating this case. When asked, however, what an appropriate hourly fee for those hours would be, he responded: "Well, that would be a somewhat arbitrary figure. I mean none of us are really paid hourly, but again the equipment, the gas money, the company vehicles and the time, I would think that $40 an hour would be fair." On cross-examination, the regional manager admitted that he had no record with him of the exact amount of time he or other employees had spent on this case. He additionally testified that he was paid on a salary rather than hourly basis and that Beall's incurred no additional loss because of the hours he expended on this case. Under these circumstances, we find that the trial court erred in awarding $1600 in investigative costs. The regional manager referenced no records in estimating the time spent on this case, admitted that the hourly fee was arbitrary, and acknowledged that he was a salaried employee for which Beall's expended no additional salary costs as a result of Glaubius' offense. As indicated above, the purpose of restitution is to adequately compensate a victim and to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. It is not to create a windfall for the victim. Further, section 775.089(7) requires that the State demonstrate the amount of loss sustained by a victim by a preponderance of the evidence. Such evidence must be established through more than mere speculation; it must be based on competent evidence. See, e.g., Williams v. State, 645 So.2d 594 (Fla. 2d DCA 1994) (State has not met its burden of demonstrating loss by preponderance of evidence where victim's testimony is sole basis for determination and no documentary evidence is presented). To hold that the Beall's could recover $1600 based on the speculative evidence presented in this case would raise significant due process concerns regarding the validity of section 775.089 because such a holding would risk requiring Glaubius to pay a sum in excess of the amount of damages his criminal conduct caused the victim. See, e.g., Fresneda v. State, 347 So.2d 1021, 1022 (Fla. 1977) (in reviewing constitutionality of section 948.03, Florida Statutes (1975) (governing probation conditions), court held that condition of probation requiring probationer to pay money to, and for benefit of, victim of crime cannot require payment in excess of amount of damage criminal conduct caused victim). Accordingly, we quash the district court's decision to the extent it affirmed the trial court's ruling on this issue and remand this cause with directions that the district court require the trial court to conduct a new evidentiary hearing to determine the actual amount of damages Beall's incurred in this case over and above its usual expenses.
Glaubius also argues that the trial court erred in including $360 in the restitution award, which represented the amount of cash Glaubius took from Beall's, because that money was repaid prior to charges being filed. At the restitution hearing, Beall's regional manager admitted that at least some of that amount had been repaid but contended that, because it was repaid with money taken from fraudulent refunds, Beall's was still entitled to repayment for the stolen cash. We find the regional manager's argument to be illogical. The trial court awarded Beall's $3000 for fraudulent refunds. Given that Beall's is being reimbursed in full for the fraudulent refunds, to allow Beall's the additional $360 would essentially constitute a double reimbursement of the stolen cash. We find that, upon remand, the trial court should disallow restitution for any amounts already paid to Beall's.
Accordingly, we approve in part and quash in part the district court's decision in this case and remand for proceedings consistent with the dictates of this opinion.
It is so ordered.
SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in result only.
NOTES
[1] The offense at issue occurred between September 20, 1993, and December 13, 1994. Consequently, the 1993 version of section 775.089 governs this case. The statute was amended in 1995 but those amendments are not pertinent to the issues in this appeal.