GREEN, Judge
(dissenting).
I respectfully dissent because of the majority’s refusal to put the State to the task of demonstrating that the victim/cruise line sustained actual losses, by virtue of Montalvo’s criminal conduct. In my view, the majority’s holding in this ease not only contravenes the express and unambiguous requirements mandated by the Florida legislature in section 775.089, Florida Statutes (1995), but has the potential of allowing this crime victim and others to recoup undeserved financial windfalls simply because of their status of crime victims. Curiously, the majority posits that requiring the state to adhere to its statutorily mandated duty of demonstrating an actual loss by the victim due to Montalvo’s criminal conduct would “convert a restitution hearing into a full blown civil trial for damages” and somehow “elevate a thief to the status of a legitimate civil litigant.” Maj. op. at 986. In reaching this conclusion, the majority appears to conversely have little concern about the possibility of relegating otherwise law-abiding crime victims to the status of thieves by allowing them to recoup financial awards to which they may not be lawfully entitled.[3] Fortunately, the Florida legislature did have such a concern,' which is precisely why it mandated restitution only for actual damages or losses sustained as a result of a defendant’s criminal episode. See § 775.089(1)(a)1, 2. Because it is utterly clear on the record before us that the state failed to carry its burden of demonstrating the victim’s' losses on or after March 29, 1996, the date of Montalvo’s arrest, I would reverse the restitution order under review and remand for additional proof to be adduced by the state prior to the imposition of any restitution.
I
We are confronted in this case with a somewhat unusual request for restitution by *988 a crime victim. Here, it is undisputed that a portion of the cruise line’s property (i.e., several cruise cabins and related cruise amenities), admittedly misappropriated by Montalvo, was returned entirely unused to the cruise line on the date of Montalvo’s arrest.[4] Despite the return of its unused property and services, the cruise line nevertheless filed a sworn claim with its insurance carrier for the full value of the subject cabins and services based upon its claimed inability to sell the same to legitimate customers. Put another way, the cruise line’s claimed losses were its “missed opportunity” to sell its unused product and services to legitimate customers due to Montalvo’s misappropriation of the same. Montalvo correctly maintains that the only way that the cruise line would have sustained actual losses for its March 29 and May 12 cruises is if the cruise line had to turn away potential customers for such dates due to his criminal conduct. If these cabins and cruise amenities would have gone unsold due to the lack of a market for the same on these dates, it cannot be said that the cruise line sustained actual losses or damages by virtue of Montalvo’s criminal endeavors.
The cruise line filed a sworn claim with its carrier averring that it had sustained losses in the sum of $37,834.50 as a result of Mon-talvo’s criminal conduct. The carrier, however, conducted its own internal investigation and determined that the cruise line’s losses were not quite that extensive. Ultimately, the carrier settled the cruise line’s claim by adjusting the cruise line’s losses to $12,-457.00. The carrier paid the same, minus the $2500.00 policy deductible. The carrier was then subrogated to the rights of the cruise line at the restitution hearing below.
il
Montalvo pled nolo contendere to the grand theft charge and was placed on probation with the special condition that he make restitution. Because the issue of restitution as of the date of Montalvo’s arrest was so heavily disputed,[5] the court scheduled an evi-dentiary restitution hearing pursuant to section 775.089(7),[6] to resolve the dispute. Contrary to the majority’s conclusion, the record reflects that the issue of restitution was not simply left to the discretion of the trial court pursuant to Montalvo’s plea agreement. Consequently, the restitution order is not before us on an abuse of discretion standard. Rather, the trial court’s restitution order which is unsubstantiated by the record evidence is clearly erroneous and constitutes reversible error. See Delks v. State, 622 So.2d 624, 625 (Fla. 2d DCA 1993) (where defendant pled nolo contendere to grand theft for embezzlement of rents collected for absentee landlord, restitution order requiring defendant to pay $4000.00 reversed and amended where the state produced rental receipts totalling only $3000.00); House v. State, 614 So.2d 677, 677-78 (Fla. 1st DCA 1993) (reversing restitution order due to the lack of any probative evidence demonstrating the amount ordered constituted “ ‘damage or loss caused directly or indirectly by the defendant’s offense’” of grand theft) (quoting § 775.089(1)(a), Fla. Stat.); Bianco v. State, 594 So.2d 861, 862 (Fla. 4th DCA 1992) (restitution order modified where evidence did not show that one victim’s increased mortgage and rental expense were caused by defendant’s crime); Mansingh v. State, 588 So.2d 636, 637-38 (Fla. 1st DCA 1991) (in determining amount of restitution, trial court *989 erroneously included sums attributable to items appellant was never specifically charged with having stolen and were not found in his possession and to damages incurred during burglary of victim’s home); Morel v. State, 547 So.2d 341, 342 (Fla. 2d DCA 1989) (state did not carry burden of establishing by preponderance of evidence that appellant caused victim’s damages in the amount of $16,800.00); Hamm v. State, 403 So.2d 1155, 1156 (Fla. 1st DCA 1981) (in determining amount of restitution, trial court may not “ ‘require payment in excess of the amount of damage the criminal conduct caused the victim’”) (quoting Fresneda v. State, 347 So.2d 1021, 1022 (Fla.1977)); Riner v. State, 389 So.2d 316, 317 (Fla. 2d DCA 1980) (probationary order requiring defendant to pay restitution for all damages resulting from auto accident, and not just those damages arising from the criminal act of leaving the scene, was improper).
Ill
The restitution statute, by its clear and plain language, is meant to provide an alternative legal redress for a crime victim’s actual losses and damages. Specifically, section 775.089 provides in relevant part that:
(l)(a) In addition to any punishment the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant’s offense; and
2. Damage or loss related to the defendant’s criminal episode.
***** *
(7) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney ....
(emphasis added).
Implicit in this clear language is a recognition of the fact that no restitution may be ordered absent a showing, by a preponderance of the evidence, of the victim’s loss or damage caused by the defendant’s criminal conduct. See Delks, 622 So.2d at 625; House, 614 So.2d at 677-78; Bianco, 594 So.2d at 862; Mansingh, 588 So.2d at 637-38; Morel, 547 So.2d at 342; Hamm, 403 So.2d at 1156; Riner, 389 So.2d at 317. Indeed, the supreme court declared, years ago, that trial courts could not impose restitution in excess of the amount of damage the criminal conduct caused the victim. See Fresneda, 347 So.2d at 1022. More recently, the court has said that:
[T]he purpose of restitution is to adequately compensate á victim and to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. It is not to create a windfall for the victim. Further, section 775.089(7) requires that the State demonstrate the amount of loss sustained by a victim by a preponderance of the evidence. Such evidence must be established through more than mere speculation; it must be based on competent evidence.
Glaubius v. State, 688 So.2d 913, 916 (Fla.1997). Thus, unless a defendant, unlike Montalvo, specifically waives any objection to the imposition of restitution, a trial court simply does not have the discretion to “arbitrarily award any amount of restitution it deems adequate[;]” it is limited by the plain language of section 775.089. See Glaubius, 688 So.2d at 915.
IV
Montalvo correctly asserts that before the cruise line may recoup restitution for its “missed opportunity” to otherwise sell the cabins and amenities for the March and May cruises, the state must establish by a preponderance of the evidence that the cruise line had willing purchasers in the marketplace for the same. The state failed to meet this burden where it was established at the hearing below that the March 29th cruise was not a sell-out for the cruise line, and that there were other unsold cabins available to prospective customers.[7] Moreover, the state’s *990 sole witness at the restitution hearing candidly acknowledged that he had absolutely no knowledge of whether the cruise line sustained any actual losses by virtue of Montal-vo’s criminal conduct and indeed conceded that it was even possible that the cruise line sustained no losses:
******
Q. How many people were booked on the boat with them on the day of March 29th?
A. That I couldn’t answer. I guess that would be up to the cruise line. I know there were numerous people.
Q. Do you understand the ships, they have a loft, cabins; don’t they?
A. I would imagine.
Q. Do you know how full they are when they typically sailed?
A. I could only guess.
Q. They are quarter-full, half-full?
******
A. It’s conceivable that cruise ships would not sail with less than a certain percentage capacity. I would think they are usually eighty percent full.
Q. It is conceivable that the tickets that were not used, the tickets that weren’t sold on March 29th wouldn’t have been sold anyway to anyone?
A. It’s possible. Only the cruise ship could answer that.
Q. It’s possible that the ships that hadn’t sailed yet, the ones that you charged $400, those tickets might have not been sold yet?
A. It’s possible.
Q. So it’s possible that the cruise line suffered no actual loss after the 29th, the day that Mr. Montalvo was pulled off the boat?
A. Depending if they were booked out totally or not.
¡X * * * * *
This uncertain and speculative testimony makes clear that the state failed to meet its burden of establishing that the victim sustained any actual loss or damage by virtue of Montalvo’s criminal conduct for which it is now entitled to restitution.[8] With further proceedings, the cruise line may indeed be in a position to substantiate its claimed losses. On the other hand, any claimed inability or difficulty in establishing the victim’s alleged losses or damages in this case still could not justify the court’s imposition of restitution.[9] See Delks, 622 So.2d at 625; Thomas v. State, 480 So.2d 158, 160 (Fla. 1st DCA 1985) (restitution figure set by trial court “was a commendable effort to deal fairly with both parties” where it was impossible to arrive at accurate figure; nevertheless, the amount awarded could not stand where it was unsupported by the evidence).
For all of these reasons, I would reverse the restitution order under review and remand for additional proceedings prior to the imposition of restitution in this case.

. Surely, the legislative intent of § 775.089(1)(a)1, 2 is not to deter criminal conduct on the part of the defendant on the one hand, and encourage criminal activity on the part of the victim on the other hand, with the filing of inflated or nonexistent claims for restitution.

. Montalvo never disputed below that he was responsible for the repayment of all cabins and cruise amenities utilized by himself and his friends prior to the date of his arrest on March 29, 1996.

. At times during the proceedings below, the amount of restitution requested varied from $7000 to $40,000.

. That section provides that:
Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney. The burden of demonstrating the present financial resources and the absence of potential future financial resources of the defendant and the financial needs of the defendant and his dependents is on the defendant. The burden of demonstrating such other matters as the court deems appropriate is upon the party designated by the court as justice requires.
§ 775.089(7), Fla. Stat.

. This undisputed fact, in my opinion, completely undermines the majority's suggestion that a loss was somehow demonstrated because the cruise *990 line had no time to resell the cabins because of the timing of Montalvo's arrest.

. The fact that the carrier may have voluntarily settled the cruise line’s claim still does not demonstrate compensable losses or damages by virtue of Montalvo's criminal conduct.

. While I agree with the majority that the degree of proof of a loss in a restitution hearing need not be as extensive as the proof adduced in a civil trial, there nevertheless must be a modicum of proof to conform to the statutory requirements of the restitution statute. Otherwise, the imposition of a monetary award, absent proof of loss, would be tantamount to the imposition of a fine. While the legislature can certainly mandate the imposition of fines as additional punitive measures, such fines cannot be imposed under the guise of restitution.