SILBERMAN, Judge.
 

 Kenneth Ray Canerday entered a guilty plea to grand theft, and he appeals a restitution order in the amount of $13,010.58, contending that the evidence was insufficient to support that amount. We reverse and remand for a new restitution hearing because the evidence was insufficient to support $4156.58 of the award.
 

 Canerday was employed as a service technician for All American Garage Door Services. The company claimed that Can-erday was charging customers for work done and collecting payments but that he either kept the payments or turned over only part of the payments. The company’s accountant testified that in October 2007 Canerday provided him with receipts for work done on behalf of the company. Canerday admitted to the accountant that he had cashed some of the checks for that work. The owner of the company, Mr. Warner, testified that any checks should have been made out to the company, not to Canerday, and that Canerday should have turned over to Mrs. Warner, the compa
 
 *274
 
 ny’s bookkeeper, the checks and any cash he received from customers.
 

 Mrs. Warner testified that she prepared State’s Exhibit 1, a spreadsheet, from company records of “missing/questionable tickets” by reviewing outstanding invoices. The company was seeking a total of $13,010.58 as a result of Canerda/s activities.
 
 [1]
 
 Before moving the exhibit into evidence, the prosecutor elicited from Mrs. Warner that the accountant had given her some receipts for customers that had paid cash. She indicated that “admissions” had been made with respect to those receipts. On appeal, Canerday does not challenge the restitution amounts for the customers that Mrs. Warner indicated were the subject of the admissions.
 

 The prosecutor then requested to move the spreadsheet into evidence. The defense objected as follows:
 

 All this shows is there’s some names, and all she’s testified to is what the amounts they allege [are] missing. There’s [sic] no receipts here to state what work was done, what was charged, no indication of how this was on this spreadsheet, how the money was paid, whether it was cash, check, credit card. There’s not even a company name on this document and I’m going to object to it being moved into evidence, Your Hon- or.
 

 The trial court overruled the objection, stating that it went to the weight of the evidence, not the admissibility.
 

 Mrs. Warner then testified that she was satisfied that the customers had paid for the services listed on the spreadsheet. She indicated that she had called the customers and testified, “I was informed that some of the tickets where it said customer will mail check, they actually paid when Mr. Canerday was there, made checks out to him personally instead of the company.” She testified that the clients made payments to Canerday and that the company had not received payments. The prosecutor then asked whether she had receipts for these transactions, and she said yes and that she had previously provided them to Detective Alexander during the investigation. Mrs. Warner added that she brought receipts to court but that some were missing. She said that they were at home but that she did not have time to find them.
 

 The State requested to move into evidence State’s Exhibit 3, which was a composite of individual tickets that partially supported the spreadsheet. The defense did not object, and the trial court admitted the composite exhibit. We note, as Caner-day argues on appeal, that the composite does not include receipts for thirteen of the customers listed on the spreadsheet.
 

 Mrs. Warner testified on rebuttal, and the trial court asked her if she called everyone listed on the spreadsheet “to verify what they stated they paid.” She said she did and explained as follows:
 

 And they responded either they had paid him that day when it said — the ticket said a customer will mail in the check and they said they paid him that day. In some case[s], and I didn’t bring it in, I had them FAX some of the checks that they did pay him.
 

 The trial court found Mrs. Warner “to be extremely credible” and found Caner-day “to be a thief.” The trial court ordered restitution in the full amount claimed, $13,010.58.
 

 
 *275
 
 Canerday points to three errors in assessing the restitution amount. First, he contends that the amounts claimed for thirteen of the customers were not supported by any documentation such as receipts. Second, he contends the State failed to adequately prove some of the amounts claimed as missing. Third, he contends that no evidence or testimony establishes the amount of $1275.58 added on at the bottom of the spreadsheet.
 

 When the amount of restitution is disputed, the State has the burden to prove by the preponderance of the evidence the amount of the victim’s loss as a result of the defendant’s offense. § 775.089(7), Fla. Stat. (2007);
 
 Glaubius v. State,
 
 688 So.2d 913, 916 (Fla.1997). In
 
 Glaubius,
 
 the Florida Supreme Court stated as follows:
 

 Such evidence must be established through more than mere speculation; it must be based on competent evidence.
 
 See, e.g., Williams v. State,
 
 645 So.2d 594 (Fla. 2d DCA 1994) (State has not met its burden of demonstrating loss by preponderance of evidence where victim’s testimony is sole basis for determination and no documentary evidence is presented).
 

 688 So.2d at 916. In
 
 Williams,
 
 the victim testified as to the value her insurance company placed on property lost in a burglary, the lower amount the company paid her, and the difference that was her loss. 645 So.2d at 594-95. This court determined that the victim’s testimony was insufficient to support a restitution award without documentary evidence regarding the amount the insurance company paid.
 
 Id.
 
 at 595. This court recognized that “the state has not met its burden of demonstrating loss by a preponderance of the evidence where no documentary evidence is presented.”
 
 Id.
 
 (citing
 
 Delks v. State,
 
 622 So.2d 624 (Fla. 2d DCA 1993);
 
 Morel v. State,
 
 547 So.2d 341 (Fla. 2d DCA 1989)).
 

 In
 
 Moore v. State,
 
 694 So.2d 836, 837 (Fla. 2d DCA 1997), the witnesses testified over objection regarding the value of the victim’s loss “based on information they received from an accountant who did not testify and on their examination of documents and records that were not produced at the restitution hearing.” The court noted that the State did not produce any documentary evidence.
 
 Id.
 
 “Given the defendant’s timely objection, this hearsay evidence was inadmissible to prove the amount of restitution.”
 
 Id.
 
 Because the State failed to prove the amount of the loss by a preponderance of the evidence, the court reversed and remanded for a new restitution hearing.
 
 Id.
 

 Here, Canerday objected to the admission of the spreadsheet into evidence because it was compiled from receipts that were not in evidence. Thus, he objected to the lack of documentary evidence and argued, in essence, that the spreadsheet was hearsay. The court overruled the objection. Later, some of the receipts were admitted into evidence. However, the State produced no receipts or other documentation for thirteen of the customers listed on the spreadsheet, with losses totaling $1103. We note that the State elicited from Mrs. Warner that she had previously provided
 
 all
 
 the receipts to Detective Alexander.
 

 Although there was no objection to Mrs. Warner’s testimony that she called the customers and they told her that they paid Canerday, nothing other than the spreadsheet indicated the amounts for thirteen of the customers. When she testified regarding the amount the company was seeking as to some of the individual customers, she was referring to the amounts on the spreadsheet. Because the defense objected to the admission of the spreadsheet and
 
 *276
 
 no other evidence established the amount of loss for those thirteen customers, we reverse and remand for a new restitution hearing as to those customers.
 
 [2]
 

 For nine of the customers listed on the spreadsheet for whom receipts were introduced into evidence, the receipts indicated the amount paid by the customer. These amounts were shown on the spreadsheet as the amounts that the company received. The spreadsheet indicated additional amounts not shown on the receipts as “missing.” Mrs. Warner testified that the company had a set price schedule, that the receipts showed less than the set prices, and that Canerday had kept the difference. Mrs. Warner testified without objection that customers told her they paid Caner-day when he was at their home, although some receipts reflected the customer would mail a check. However, she did not testify as to specific amounts that any individual customer paid in excess of what the receipts stated in order to establish the amounts claimed as missing. She acknowledged that she had copies of some of the customers’ checks that they had faxed to her, but the State did not produce these checks at the hearing. The defense argued to the trial court that the State failed to prove the amounts that were alleged missing over the amounts that were received. Because no competent evidence supports the additional amounts, totaling $1778 for those nine customers, the trial court erred in including that $1778 in the restitution award.
 
 [3]
 

 With respect to the amount of $1275.58 that Canerday challenges, this amount was handwritten on the spreadsheet at the bottom of the “Missing/Stolen” column. No testimony or other evidence explains what this figure represents, and the State failed to prove that it was a part of the victim’s loss as a result of Canerday’s offense.
 
 See
 
 § 775.089(7). Thus, the trial court erred in including the $1275.58 in the restitution award.
 

 Finally, we disagree with Caner-day’s contention that the proof was insufficient regarding the $165 loss for customer Ty Tom. The State presented unobjected to documentary evidence and Mrs. Warner’s unobjected to testimony to support the $165 loss. Canerday has not shown that the trial court erred in including that amount in the restitution award.
 

 In summary, we conclude that of the $13,010.58 awarded, the trial court erred in awarding $4156.58 ($1103 for the thirteen customers with no invoices, $1778 for the nine customers with amounts in excess of what the invoices stated, and $1275.58 for the amount added on without explanation at the bottom of the spreadsheet). Thus, we reverse the restitution order and remand for a new restitution hearing.
 
 See Glaubius,
 
 688 So.2d at 916 (reversing restitution award and remanding for “the trial court to conduct a new evidentiary hearing to determine the actual amount of damages”). The trial court need not take evidence again regarding the amounts the State already proved, totaling $8854 ($13,-010.58-$4156.58).
 

 Reversed and remanded.
 

 DAVIS, J., and FULMER, CAROLYN K., Senior Judge, Concur.
 

 [1]
 

 . The spreadsheet includes the amount of $1275.58 at the bottom of the "Missing/Stolen” column but does not attribute that figure to a customer or explain what it represents, although it is included in the total of $13,010.58.
 

 [2]
 

 . Those thirteen customers as listed on the spreadsheet are Atkinson, Bollent, Brewing-ton, Duncan, Evans, Grace, Hickman, Johnson, Mowlin, Osborn, Pauls, Six, and Turkel.
 

 [3]
 

 . Those nine customers as listed on the spreadsheet are Black, Cantor, Doran, Fraser, McCants, Stauffer, Vanvelkinburgh, Vickery, and Weigand.