Klingensmith, J.
Appellant Barrington Parague appeals his convictions of aggravated assault with a deadly weapon and felony battery, as well as his sentence and the accompanying order to pay $30,000 to the victim in restitution. Although we affirm his conviction without further comment, we find the restitution order was the product of improper coercion by the trial court and reverse that portion of the sentence.
Appellant’s charges stemmed from an incident that began with a verbal altercation between appellant and victim at appellant’s place of work. What led to the altercation was a matter of dispute. What was undisputed is that during the episode appellant swung a machete toward the victim, slapping him across the chest with the flat side of the blade. The. victim testified that this strike caused a bruise on his chest. Then, at some point during the altercation, a third party (appellant’s employee) grabbed the victim from behind and slammed him to the ground, causing a dislocation of the victim’s shoulder.
After appellant was convicted of the charges, the court conducted a sentencing hearing where restitution was discussed. The victim agreed that his shoulder was dislocated when the third party threw him to the ground. Consequently, he lost his labor-intensive job and had not been able to work there since. He received four months of physical therapy that totaled $5,000 to $6,000, and although he never found out how much shoulder surgery would cost, he could not afford it regardless.
At this point, the State interjected and explained that restitution relating to the shoulder injury was unavailable because it was not caused by appellant:
[THE STATE]: There’s a little bit of a restitution issue in this case, I guess. Unfortunately, for the victim the injuries really were caused by him being thrown to the ground.
[DEFENSE COUNSEL]: Not by [appellant].
THE COURT: I understand.
[THE STATE]: So, that’s an additional cost that typically a victim would have—at least they could get monetary compensation and be made whole, and that is not available to the victim in this case and that is causing him to have stronger feelings perhaps about the potential punishment in the case.
After several witnesses spoke on behalf of appellant to attest to his character and family obligations, and before appellant spoke on his own behalf, the court issued *569 the following warning that was clearly intended to convey the message that anything less than a full acceptance of responsibility could increase the likelihood that appellant would be imprisoned:
But I don’t want to hear anything remotely—and I’m giving you a warning. I could have been the kind of guy to sit here and lying in wait, wait to make a huge mistake, and run his mouth like some of these authors of these letters about how “I was defending myself.”
If he did that, I’m telling you straight up, he is gone, off to see the wizard.
What I’d like to hear—I don’t know that. I would like to hear someone with a happy, happy, spirit, urge the Court to, please, let him remain free so he can pay $30,000 over time to this victim for losing his job, for the surgery that he is going to need, for the $6,000 he is out already.
The surgery is going to be at least another $10,000, and instead of staying free so he can pay financial bills for a daughter—no, if he ever stays free, it is not to pay her bills. It’s to show remorse and to show contrition and to show extraordinary responsibility. If I heard things like that, I might be moved to believe a lot more of what I read in here.
If I don’t hear anything like that, if I hear about what a generous man. I hear about a generous man who does for so many people, helps employees that otherwise would not be able to feed his families, I’m moved by that, if that’s really who he is, but not for him to stay free to keep paying a meal ticket to pay for his daughter.
(Emphases added). The court continued with appellant as follows:
THE COURT: I’m not telling you what to testify to. I want to know where his heart is at, and I want to know if this is all true, if it really is.
And if he really does have that generous heart and I don’t want to hear any excuses and extraordinary responsibility of acceptance of responsibility [sic]. I’m not saying what I’m going to do,
[DEFENSE COUNSEL]: I understand.
THE COURT: Nobody knows what I’m going to do.
[[Image here]]
What would you like to do about it, sir?
[APPELLANT]: I’m very sorry that this occurred. It bothers me a lot. What if this guy had gotten cut? He didn’t get cut. I’m happy for that, too. I help him .to pay the bills. If he, I don’t know what the procedure is. .
THE COURT: The procedure is you look a man in the eye and don’t call him “this guy” while you are looking at me. Look him in the eye and tell him “I’m sorry.”
[[Image here]]
[APPELLANT]: I’m sorry.
THE COURT: What are you sorry ■ for?
[APPELLANT]: That the machete touch you.
THE COURT: What are you going to do about it?
[APPELLANT]: I’m not sure' what the procedure would be if he has to give me the bill.
[DEFENSE COUNSEL]: The procedure he is willing—
[APPELLANT]: I will try to do the best I can.
[DEFENSE COUNSEL]: He is agreeing to pay.
[[Image here]]
*570 THE COURT: Sir, regardless, you are adjudicated. Your sentence is you are adjudicated. You are convicted.
Whether I sentence you to prison— I’m going to listen to the state—listen to what the state wants, and I’m going to listen to your lawyer.
(Emphases added). The State advised the court on the maximum penalty, and explained that the court had discretion not to impose any prison sentence. However, the State also urged the court to weigh “very heavily” the fact that appellant had shown “no remorse.” Apparently sensing how the hearing would progress based on the trial judge’s statements, the State did a complete about-face on the issue of restitution, asking the court to order it in the event no prison sentence was imposed:
[THE STATE]: I would certainly ask that we agree to some amount of restitution which [the victim’s fiancé] does have the bills but they are just not on her, as well as what they have paid. I’m sure they could [g]et an estimate what that surgery would cost.
I ask that we do an extended term of probation even to auto term if the extensive restitution is paid. I am guessing it is in the $30,000. I would definitely ask that that be something that the parties agree to in exchange for him receiving leniency.
As defense counsel advised that he had a few things to say to the court, the judge remarked that while he was not inclined to impose a prison sentence, it was still a possibility:
I’m trying to stop you from making your pitch for “please don’t send him to prison,” because I’m already telling you upfront, I’m not going to send him to prison, but that would be very presumptuous of him for you to think that that wasn’t' one of the things in the equation, because the state made it very clear they were seeking prison and they offered 36 months in prison beforehand, so it’s as very much on the table.
(Emphasis added). The State suggested that the parties “agree” on what victim’s bills were to set the amount of restitution. Addressing that issue, the court stated:
THE COURT: There is a chance, [appellant], that the medical bills would end up being $27,000, $26,000 or a chance of $46,000 or over $46,000. You both take a chance. Fix a number like 30. Probably with after-care over time it could be more, but he is willing to live with that if you are willing to live with that.
[DEFENSE COUNSEL]: Yes.
Although appellant ultimately agreed to the $30,000 restitution figure included in the court’s sentencing order, there were no medical records or other related documents pertaining to victim’s injury that were ever submitted into evidence. The final order stipulated that appellant’s failure to pay the full restitution amount in a year’s time would result in 364 days of incarceration. This appeal followed.
Normally, “[a] trial court’s restitution order is reviewed under an abuse of discretion standard.” Hunter v. State, 48 So.3d 174, 175 (Fla. 4th DCA 2010). However, where an appellant is alleged to have been improperly coerced into agreeing to the restitution amount ordered, “[t]he legality of a sentence is a question of law and is subject to de novo review.” Flowers v. State, 899 So.2d 1257, 1259 (Fla. 4th DCA 2005).
There are two issues relating to the restitution order on appeal: the first is whether the trial court erred in entering the special restitution order because there was no evidentiary finding that appellant caused the injury on which it was based, and the second is whether the trial court improperly coerced appellant to agree to *571 the restitution as a way of showing remorse. We find that the court erred in both respects.
With regard to the trial court’s imposition of restitution, section 775.089, Florida Statutes (2015), provides, in relevant part:
(l)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant’s offense; and
2. Damage or loss related to the defendant’s criminal episode,
[[Image here]]
(7) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney.
§ 775.089, Fla. Stat. (2015) (emphasis added). “[T]o order restitution under the statute, the court must find that the loss or damage is causally connected to the offense and bears a significant relationship to the offense. Further, under the statute, the State must establish these factors by a preponderance of the evidence.” Dagerath v. State, 100 So.3d 1260, 1263 (Fla. 4th DCA 2012) (quoting Glaubius v. State, 688 So.2d 913, 915 (Fla. 1997)). While “the trial court has discretion to take into account any appropriate factor in arriving at a fair amount which will adequately compensate a victim for his or her loss and further the purposes of restitution,” the trial court cannot “arbitrarily award any amount of restitution it deems adequate.” Glaubius, 688 So.2d at 915.
Here, the court made no finding on whether the restitution claimed was either a direct or indirect result of appellant’s actions. Moreover, the State initially conceded there was no causal connection and that restitution was unavailable from appellant for the victim’s shoulder injury, before later adjusting its position after the court remarked sua sponte that it was inclined to order restitution in lieu of jail time. Because there was no competent substantial evidence presented by the State at the hearing to support the award of $30,000 in restitution, we reverse that portion of the sentencing order.
Additionally, reversal is necessary because the trial court violated appellant’s due process rights by explicitly extracting a coerced agreement to pay restitution as an expression of remorse when it factored appellant’s willingness to do so in crafting the sentence. Davis v. State, 149 So.3d 1158, 1160 (Fla. 4th DCA 2014) (“A trial court’s consideration of a defendant’s lack of remorse in imposing its sentence is fundamental error.”). Rather than being initiated by the appellant, it was the trial judge that first broached the prospect of appellant’s willingness to agree to pay restitution as a way of showing contrition for the injuries suffered by the victim. See Lawton v. State, 207 So.3d 359, 361 (Fla. 3d DCA 2016). The court’s statements during sentencing were clearly imbued with a threat of jail time if appellant refused to “agree” to the restitution.
Recently in Allen v. State, 211 So.3d 48, 50 (Fla. 4th DCA 2017), this court reversed a sentence that was imposed based on improper consideration of a defendant’s willingness to admit guilt. In so doing, we held:
A defendant’s rights are infringed when he or she is forced to make a choice to either remain silent at a sentencing hearing and risk that the court regard this silence as a failure to accept responsibility, or to make an incriminating statement upon the trial court’s *572 prodding, or to falsely admit wrongdoing and risk a perjury conviction in hopes of securing a measure of leniency. Any defendant in such a situation is in a vulnerable position and faced with a Hobson’s choice. Even though a defendant has the option, and indeed the-right to remain silent or maintain innocence, he or she may feel coerced under such circumstances to admit guilt, if for no other reason than to prevent receiving a harsher sentence.
While the evidence at the revocation hearing supported the allegation that appellant violated his probation, we must err on the side of protecting appellant’s constitutional rights with regard to the trial court fashioning an appropriate sentence. Here, the trial court repeatedly- threatened appellant with the maximum sentence unless he admitted guilt, while at the same time dangling the prospect of a reduced sentence if he “came clean.” Because the sentencing judge’s comments suggest that the sentence imposed was based on improper considerations, that sentence must be reversed even if it was not the maximum possible sentence that could have been given.
Id at 54-55 (footnote omitted).
Therefore, although we affirm appellant’s convictions for aggravated assault with a deadly weapon and felony battery, we vacate that portion of the disposition that ordered appellant to pay $30,000 in restitution to the victim as a condition of his probation, ■

Affirmed in part, Reversed in part.

Damoorgian and Gerber, JJ., concur.