# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-3240
_____

MARK ANTHONY TOLBERT,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Angela M. Cox, Judge.

April 22, 2019

WINOKUR, J.

Mark Anthony Tolbert appeals a restitution order. Tolbert argues that the trial court abused its discretion in ordering him to pay the victim the outstanding balance owed on a loan used to finance the purchase of the vehicle he destroyed. We find that the proper measurement of restitution here was the vehicle's fair market value at the time of the crime. As a result, we reverse.

I.

In April 2016, Tolbert was charged with aggravated fleeing and eluding of a law enforcement officer and driving under the influence causing property damage. Tolbert crashed a 2013 Toyota Yaris, owned by his ex-girlfriend Ms. Schoenfeld, into a ditch. The vehicle was totaled.

In May 2016, Tolbert entered a negotiated plea, which included a reservation of jurisdiction in order to determine the amount of restitution. During the restitution hearing, Schoenfeld testified that she purchased the vehicle three years before the incident for approximately $14,000. Schoenfeld claimed that the vehicle was purchased used, in fair condition, and with no structural damage. She also testified that she financed the vehicle's purchase through a bank loan. After the incident, Schoenfeld owed the bank $14,694.60 in order to pay off the loan. Schoenfeld's insurance company paid a portion of the payoff amount, with Schoenfeld owing the bank an outstanding balance of $11,892.76.

For his part, Tolbert presented the expert testimony of Hunter Livingston, the owner of a local car dealership. Livingston estimated the value of the vehicle at $5,850. Livingston also consulted the Kelley Blue Book, a consumer vehicle purchase guide, and estimated the retail value of a 2013 Toyota Yaris at approximately $8,000. Livingston opined that the fair market value of Schoenfeld's vehicle was approximately $6,100.

At the close of the hearing, the State argued that Tolbert owed Schoenfeld the balance owed on the bank loan. In contrast, defense counsel argued that Tolbert simply owed the fair market value of the vehicle. The trial court then entered a restitution order in the amount of Schoenfeld's outstanding loan balance, $11,892.76.

## II.

Florida law provides for restitution to a victim for damage or loss caused directly or indirectly by the defendant's offense, and for damage or loss related to the defendant's criminal episode. § 775.089(1)(a), Fla. Stat. The State has the burden of proving the amount of restitution owed by a preponderance of the evidence. § 775.089(7), Fla. Stat. The amount of restitution ordered must be supported by competent, substantial evidence. *D.J.R. v. State*, 139 So. 3d 458, 459 (Fla. 1st DCA 2014). Typically, fair market value is the appropriate measure of restitution. *State v. Hawthorne*, 573 So. 2d 330, 333 (Fla. 1991).

While intended to make the victim whole, "restitution is not intended to provide a victim with a windfall." *Rodriguez v. State*, 956 So. 2d 1226, 1232 (Fla. 4th DCA 2007) (citing *Glaubius v. State*, 688 So. 2d 913, 916 (Fla. 1997)). Therefore, restitution may not exceed the damage caused by the defendant's criminal conduct. *D.J.R.*, 139 So. 3d at 459.

## III.

A restitution order is reviewed for abuse of discretion. *Id.* First, the State argues that the trial court did not abuse its discretion because there was competent, substantial evidence to support the trial court's restitution order. The State relies on its introduction of documentation verifying the remaining balance owed on the loan, Schoenfeld's testimony of the approximate purchase price of the vehicle, as well as the condition of the vehicle at the time it was destroyed by Tolbert.

Notwithstanding the credibility and competency of Schoenfeld's testimony and the State's evidence, the State is still required to show a causal relationship between the conduct and the restitution. *Hawthorne*, 573 So. 2d at 333; *L.A.D. v. State*, 616 So. 2d 106, 108 (Fla. 1st DCA 1993). The record shows that the State did not meet this burden.

Schoenfeld entered into a loan agreement to finance the purchase of the automobile. Schoenfeld's insurance provider made a partial payment to the bank, but a balance remained. The State, however, did not present evidence connecting the balance owed to Tolbert's criminal conduct. Schoenfeld's loan pre-dated the incident and reflected the money owed to the bank in exchange for the purchase of the vehicle. Even if Tolbert had not destroyed the vehicle, Schoenfeld would still be obligated to pay off the loan. Therefore, the State cannot prove that, "but for" Tolbert's conduct, Schoenfeld would not owe $11,892.76.

Second, the State asserts that fair market value is not the only standard for ascertaining restitution. It is true that "a court is not tied to fair market value as the sole standard for determining restitution amounts." *Hawthorne*, 573 So. 2d at 333.

3

Deviations from fair market value, however, have been recognized in limited circumstances, such as the "theft of a family heirloom, a new automobile, or an older car that had been repaired shortly before the theft." *Davis v. State*, 244 So. 3d 374, 377 (Fla. 4th DCA 2018). The common thread of these exceptions is that the value of the stolen property itself consists of more than just its fair market value.

This case does not trigger these exceptions. The loan balance owed is the remaining amount of the purchase price covered by the bank in order to finance Schoenfeld's purchase of the vehicle. The State failed to show that the money owed on the bank loan made the vehicle worth more than just its fair market value. Thus, it was improper for the trial court to order restitution in excess of that value.

IV.

Restitution is designed to compensate a victim for a loss incurred as a result of a defendant's criminal conduct. The task of making of victim whole, however, is constrained by the legal requirements that a victim not receive a windfall and that a defendant not pay in excess of the damage he caused. While it may seem unfair that Schoenfeld owes money on a vehicle she no longer possesses, the balance is a product of Schoenfeld's financial decision. Tolbert's responsibility lies as far as his damage to the vehicle. In this case, that amount is reflected by the vehicle's fair market value. Accordingly, we reverse and remand for restitution proceedings consistent with this opinion.

REVERSED and REMANDED.

WINSOR, J., concurs with opinion; MAKAR, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

4

WINSOR, J., concurring.

This case is about the value of the loss. Courts have discretion in how they award restitution, but all awards remain limited by statute, and "[u]nder the plain language of the statute, the loss or damage to be compensated must be 'directly or indirectly' related to the offense." *Glaubius v. State*, 688 So. 2d 913, 915 (Fla. 1997) (referencing § 775.089(1)(a)). Therefore, although the court announced in *State v. Hawthorne* that trial courts must consider compensation, rehabilitation, deterrence, and so forth, "[t]his does not mean [] that a trial court can arbitrarily award any amount of restitution it deems adequate." *Glaubius*, 688 So. 2d at 915 (citing *State v. Hawthorne*, 573 So. 2d 330 (Fla. 1991)). Instead, the court must focus on the loss. The question in this case, then, is whether the unsecured portion of a car loan constitutes "damage or loss" the defendant caused. I conclude that it does not, and I join the court's opinion.

In *State v. Williams*, the Florida Supreme Court noted that section 775.089(1)(a)'s "directly or indirectly" limitation precluded restitution for damages that "would have occurred with or without" the offense. 520 So. 2d 276, 277 (Fla. 1988) ("Section 775.089(1)(a) is not ambiguous."); *accord Glaubius*, 668 So. 2d at 915 (explaining that "to order restitution under the statute, the court must find that the loss or damage is causally connected to the offense"). Here, to the extent a preexisting, outstanding loan balance is properly considered "damage or loss," it is damage or loss that "would have occurred with or without" Tolbert's crime.

Relying principally on dicta in a *Hawthorne* footnote about new-car depreciation, the dissent does include the loan balance as part of the "damage or loss." But the *Hawthorne* footnote attaches to the court's discussion about calculating depreciation, which of course goes to the car's *value*. 573 So. 2d at 333 & n.5. Here, there is no real dispute about the car's value. Regardless, it is one thing to suggest that someone causes a $20,000 loss when they steal a car bought minutes earlier for $20,000. It is quite another to say someone who steals a $6,000 car causes not only the loss of the car, but is also responsible for any loan balance—so long as the loan was partially secured by the car. *Cf. Lewis v. State*, 238 P.3d 833 (Nev. 2008) (reversing $5,200 restitution award that

5

"included the $4,500 loan balance paid by the victim's insurance company and the $700 paid by the victim to reacquire the car" because there was insufficient evidence that the *car* was worth $5,200).

*Hawthorne* observed "that in most instances the victim's loss and the fair market value of the property at the time of the offense will be the same." 573 So. 2d at 333; *accord Mansingh v. State*, 588 So. 2d 636, 638 (Fla. 1st DCA 1991). This is one of those instances. There is nothing particularly unique about having a partially secured car loan. And if the victim lost a $6,000 car and got $6,000 in restitution, she could acquire another $6,000 car.[1] That would leave the victim just where she began: with a $6,000 car and a $12,000 loan. In other words, the restitution award would cover her "damage or loss." If, on the other hand, the victim got the value of her car *plus* the unsecured portion of her loan (roughly $12,000) and bought a $6,000 car, she would come out $6,000 ahead. This would result in a windfall, and as the majority opinion notes, restitution awards are not supposed to do that.[2] *Glaubius*, 688 So. 2d at 916 (noting that

---

[1] This is all theoretical because, as the dissent notes, victims often do not receive the restitution courts order. And even if a restitution award is promptly paid, it cannot always cure the serious, noneconomic burdens the victim has suffered (and will suffer). Here, even if the victim received a perfectly comparable car immediately, she still would have suffered great harm in going through this whole ordeal. But the legal issue in this case is the value of the loss the appellant caused, which the Florida Supreme Court has held is ordinarily "the fair market value of the property at the time of the offense." *Hawthorne*, 573 So. 2d at 333.

[2] Incidentally, if we were to go down the road of allowing windfalls in this way, we should consider some limiting principle. What if a victim owed $50,000 on an $8,000 car? Retail car loans often fold in earlier car loans, meaning borrowers frequently owe far more than their cars' values. *See* Federal Trade Commission, Consumer Information, *Auto Trade-ins and Negative Equity*, available at https://www.consumer.ftc.gov/articles/0257-auto-trade-ins-and-negative-equity (explaining negative-equity car

requiring a defendant to pay more than "damages his criminal conduct caused" "would raise significant due process concerns regard the validity of section 775.089"). I concur.

MAKAR, J., dissenting.

This restitution case involves an upside-down Yaris. During his high-speed attempt to elude police officers, an inebriated Mark Anthony Tolbert drove at times in excess of 100 mph, ran stoplights and stop signs, and nearly collided with roadside objects. It didn't end well: Tolbert crashed the pilfered 2013 Toyota Yaris in a ditch, rendering the vehicle a total loss. He was charged with and pled guilty to two charges: aggravated fleeing and eluding of a law enforcement officer and driving under the influence causing property damage.

Tolbert had taken the vehicle from the victim, an ex-girlfriend who—at about the time of the incident in early 2016—owed a balance of $14,694.60 on her auto loan with Santander Bank. The loan was upside-down because the amount due exceeded the street value of the Yaris. At the time of the restitution hearing, the balance due was reduced to $11,892.76, which reflected various adjustments for insurance proceeds that had been paid. The victim had agreed to the loan's high interest rate (14%), which she characterized as "high robbery," because she needed a car and had poor credit at the time (she had since paid on the loan for about two and one-half years). The State sought, as restitution, the current balance then due. Tolbert's expert testified that the Yaris, which was a standard model with no frills and assumed to be in "good" condition at the time of the crash, was worth about $6,100 wholesale and $8,000 retail.

The State argued that Tolbert's criminal escapade caused the victim to lose the entire value and the use of her vehicle, and that because the purpose of restitution is to make her whole, the trial judge should award the remaining balance due on the auto

---

loans). What if a victim had an unsecured loan—say, from a family member—but used the funds to buy the car? What if a victim folded her car loan and other consumer debt into a home equity loan?

7

loan. Tolbert argued that the victim was only entitled to market value, which its expert said was much lower, in part, because the victim—not Tolbert—had "made a very bad deal" in accepting a high interest rate. The State countered that due to Tolbert's actions not only was the victim without a means of transportation but that she "is still having to pay for a vehicle she no longer has."

In deciding what to do, the trial judge noted that restitution "is an opportunity to make amends and to make the victim of a crime whole, at least to the extent it is possible to do so." As to this case, she ruled that "the criminal conduct of the defendant caused the victim to have her car totaled" and that "requiring the defendant to pay $11,892.76 is not in excess of the damage he caused."

On appeal, Tolbert says the victim was entitled only to a fair market valuation of the vehicle, which is the general, but not exclusive, measure for assessing a victim's losses. Florida's restitution jurisprudence is flexible and allows for departures from a strictly fair market value approach if the goals of criminal justice or the equities in a case are better served by fully compensating the victim via another methodology. As our supreme court said in *Spivey v. State,* the "purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system." 531 So. 2d 965, 967 (Fla. 1988). Relying on *Spivey*, the supreme court in *State v. Hawthorne* emphasized that although "in most instances the victim's loss and the fair market value of the property at the time of the offense will be the same" it could "foresee instances when the market value of the property would not adequately reflect the victim's loss or when the consideration of the percentage of depreciation would be inequitable." 573 So. 2d 330, 333 (Fla. 1991) (footnotes omitted). Relying on *Hawthorne*, the supreme court emphasized that a "trial court has discretion to take into account any appropriate factor in arriving at a *fair amount* which will adequately compensate a victim for his or her loss and further the purposes of restitution." *Glaubius v. State*, 688 So. 2d 913, 915 (Fla. 1997) (emphasis added). Far from dicta, our supreme court established that discretion exists for establishing a "fair amount" apart from

8

fair market value, and has repeatedly said the "trial court is in the best position to determine how imposing restitution may best serve [the goals of rehabilitation, deterrence, and retribution] in each case." *Id.*

One of its examples from *Hawthorne* involved a new automobile that is stolen immediately after its purchase. 573 So. 2d at 333 n.5. Because a new vehicle "depreciates considerably as soon as the purchaser drives it off the lot," restitution based on traditional fair market value would lead to an "inequitable result" and thereby "not serve the restitution statute's purpose of compensating the victim for the loss sustained as a result of the offense." *Id.* In these situations, a trial court "is not tied to fair market value as the sole standard for determining restitution amounts, but rather *may exercise such discretion as required to further the purposes of restitution.*" *Id.* at 333 (emphasis added). In other words, a trial court is within its discretion in assessing restitution by considering the overall impact of an offender's criminal episode versus a strictly market-based approach. *See* § 775.089 (1)(a), Fla. Stat. (2019) (trial court "shall order the defendant to make restitution to the victim for: 1. Damage or loss caused *directly or indirectly* by the defendant's offense; and 2. Damage or loss *related to the defendant's criminal episode*, unless it finds clear and compelling reasons not to order such restitution.") (emphasis added). Both *Spivey* and *Hawthorne* emphasized that the "*trial court is best able to determine how imposing restitution may best serve those goals in each case.*" *Hawthorne*, 573 So. 2d at 333 (quoting *Spivey*) (emphasis added).

The takeaway is that trial courts have discretion to depart from fair market valuations where the circumstances warrant doing so, tempered by judicially-imposed limitations. In this regard, this Court long ago held that "absent circumstances tending to show that [fair market value] does not adequately compensate the victim or otherwise serve the purpose of restitution, such as theft of a family heirloom or a new automobile, . . . or theft of an older car that had been repaired shortly before the theft, as was the case in *Hawthorne*, the amount of restitution should be established through evidence of [fair market value] at the time of the theft." *Mansingh v. State*, 588 So. 2d 636, 638 (Fla. 1st DCA 1991) (citation omitted).

Similarly, in *Dickens v. State*, which involved a stolen Chevrolet that was driven into and found at the bottom of a bay, the Second District upheld a restitution award of $1,900 reflecting the purchase price of the vehicle, the cost of repairs and improvements during ownership, and the cost of removing the car from the bay. 556 So. 2d 782, 783 (Fla. 2d DCA 1990). In doing so, the Second District distinguished and rejected application of the "rigidities of proof" used in determining market value as an element of a crime when restitution awards are determined. *Id.* at 784. A more flexible standard is appropriate because "[l]imiting the trial court's discretion to a determination of the fair market value of the property involved at the time of the crime does not further its ability to serve the goals of the restitution program." *Id.* Notably, the supreme court in *Hawthorne* "approve[d] the reasoning of the district court in Dickens," rejecting this Court's more restrictive approach at that time. *Hawthorne*, 573 So. 2d at 333.

Here, the victim lost the entire value and use of her car and she still owed a substantial amount on the car loan; presumably she has borne the expense of the loan plus the personal and financial burden of alternative transportation (unlike the victim in *Hawthorne*, the victim here did not seek the latter expenses). 573 So. 2d at 331. Tolbert says the loan's terms are the *victim's fault* and that he shouldn't bear any responsibility for her *bad business decision*; it would be inequitable for him to shoulder her loss. But didn't our supreme court in *Hawthorne* say it would be inequitable to not provide restitution for the rapid depreciation of a newly-purchased car? Why would buying a new car, that everyone knows depreciates instantly, be any less of a bad business decision than buying a used one at a higher interest rate? Why make offenders pay an amount exceeding fair market value in a new car case but not in a used/underwater car case? And shouldn't the amount of full restitution be considered in some cases from the victim's financial perspective or predicament? Suppose Tolbert wanted to use the victim's car, said that he would probably crash and total it in a Demolition Derby show that night, and asked what amount he could pay her so that she would be made whole? She'd probably tell him to pay off her loan, provide her with an equivalent car immediately, or the like. Why is fair market value the only legitimate barometer

of restitution in such a case? Why not a measure more closely approximating the value from the victim's perspective? Granted, restitution is not designed to provide a windfall to victims, but there is no evidence that the victim here entered the car loan with the expectation that if the Yaris was stolen and destroyed that she'd somehow benefit financially; far from it. Presumably she'd pay off the outstanding car loan and start anew, though she is not required to do so; theoretically, an exact replica of her Yaris might be available at the lowest estimate of fair market value, but how would purchasing it, months or years later when—if ever—Tolbert actually pays restitution, account for the loss of use and continued payment on the loan in the interim? On the flip side, suppose that Tolbert knew he'd only be responsible in restitution for $6,100 for his criminal escapade but that it would cause far more economic injury to the victim/former girlfriend. Why should he not be accountable for the greater loss?

All this said, the trial judge was on the right track to make the victim whole, and her decision to use the $11,892.76 loan amount as the basis for doing so does not jump out as an abuse of discretion on this record, i.e., not arbitrary, fanciful, or unreasonable. *Spivey*, 531 So. 2d at 967. If some adjustment is not allowed for victims with upside-down car loans, then full restitution becomes somewhat illusory and would be regressive in its impact on those struggling economically. The trial judge did not err in following what the electorate has now constitutionalized as the right of victims "to full and timely restitution in every case and from each convicted offender for all losses suffered, both directly and indirectly, by the victim as a result of the criminal conduct." Art. I, § 16(B)(9), Fla. Const. (2019) (emphasis added).

_____

Andy Thomas, Public Defender, and Justin F. Karpf, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.